**CARLSON v. UNITED STATES**
(three cases).
**Nos. 4732-4734.**

United States Court of Appeals
First Circuit.
Jan. 7, 1954.

Joseph J. Gottlieb, Boston, Mass. (Lawrence E. Cooke, Boston, Mass., with him on brief), for appellant.

Charles F. Choate, Asst. U. S. Atty., Boston, Mass. (Anthony Julian, U. S. Atty., and Edward D. Hassan, Asst. U. S. Atty., Boston, Mass., with him on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Three appeals by John H. Carlson were consolidated by our order and heard together. Our disposition of the main appeal, No. 4732, renders the two other appeals moot, and they will be dismissed on that ground.

The appeal in No. 4732 is from a judgment of the district court on December 15, 1952, adjudging appellant Carlson guilty of the offense of criminal contempt and sentencing him to imprisonment for eighteen months.

This appeal was heard along with appeals in several companion cases, all of which have certain features in common.[1] They are a by-product of the spectacular robbery perpetrated on January 17, 1950, at the Boston premises of Brink's Inc., a commercial company engaged in guarding and transporting moneys. The criminals made off with over a million dollars in cash and securities, some of it federal funds. In anticipation of the early running out of the statute of limitations relating to the federal offense involved, the government made strenuous efforts to procure indictments by a federal grand jury. No indictments were forthcoming, and subsequently the grand jury was discharged.

As indicating the extremity to which the prosecution went in this connection, it caused a grand jury summons to be served on one Joseph J. ("Specs") O'Keefe, a notorious gangster with a long criminal record, then serving a sentence in Pennsylvania for illegal possession of firearms, and a key suspect in the Brink's robbery case. It appears that prior to this summons the United States Attorney had applied to a United States Commissioner for a warrant authorizing search of "Specs" O'Keefe's home in

---

1. The other opinions in this group of cases, in the suggested order of reading, are in Hooley v. United States, 1 Cir., 209 F.2d 219; O'Keefe v. United States, 1 Cir., 209 F.2d 223; Maffie v. United States, 1 Cir., 209 F.2d 225; Daly v. United States, 1 Cir., 209 F.2d 232 and Hooley v. United States, 1 Cir., 209 F.2d 234.

Stoughton, Mass., upon the basis of an affidavit by an agent of the Federal Bureau of Investigation that a substantial sum of money which was part of the Brink's loot was believed to be secreted in the house. The warrant was issued, but the search on July 22, 1950, was unproductive. Before the grand jury, O'Keefe claimed his Fifth Amendment privilege against self-incrimination. Upon a subsequent presentment by the grand jury, the district court held that O'Keefe had lawfully claimed his privilege and declined to hold him in contempt of the authority of the court.

Along with "Specs" O'Keefe, numerous other persons, relatives of his, or presumed associates, including appellant Carlson, were summoned before the grand jury in connection with the Brink's investigation. A number of them declined to answer various questions on the ground of their privilege against self-incrimination, and after separate proceedings before the district court upon presentment by the grand jury they have each been adjudged in criminal contempt by the court sitting without a jury. Their several appeals are now before us.

Before stating the particular details of the Carlson case, we think it will be helpful to make some general observations upon the offense of which Carlson stands convicted.

■ The Congress has not made it a separate and distinct offense for a witness before a grand jury to refuse to answer any question pertinent to the matter under inquiry. In that respect the present case is to be distinguished from the situation where a witness before a congressional committee refuses to answer a pertinent question, which is covered by 2 U.S.C.A. § 192:

"Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months."

2 U.S.C.A. § 192 makes it a misdemeanor not to answer a pertinent question at a congressional committee hearing. Of course, the statute cannot deprive a witness of his constitutional privilege against self-incrimination, and so if he properly invokes the privilege his refusal to answer is not an offense. Aiuppa v. United States, 6 Cir., 1952, 201 F.2d 287. The witness acts at his peril if he refuses to answer a question either on the ground that it is not pertinent or on the ground that an answer would tend to incriminate him. If it turns out that he was in error in either particular, he has irretrievably committed a misdemeanor under 2 U.S.C.A. § 192 regardless of his good faith. See United States v. Murdock, 1933, 290 U.S. 389, 397, 54 S.Ct. 223, 78 L.Ed. 381; Sinclair v. United States, 1929, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; United States v. Costello, 2 Cir., 1952, 198 F.2d 200, certiorari denied, 1952, 344 U.S. 874, 73 S.Ct. 166; Aiuppa v. United States, 6 Cir., 1952, 201 F.2d 287. Where the witness before a congressional committee erroneously, but in good faith, invokes the privilege against self-incrimination, it has even been held that he has committed the offense described in 2 U.S.C.A. § 192 without the necessity of a ruling by the committee that the claim of privilege is rejected. See Bart v. United States, 1952, 91 U.S.App.D.C. 370, 203 F.2d 45, 48–49; Emspak v. United States, 1952, 91 U.S. App.D.C. 378, 203 F.2d 54, 57, certiorari granted, 74 S.Ct. 23.

■ In the absence of a comparable provision of law making it a misdemeanor for a witness before a federal grand

jury to refuse to answer a pertinent question, the grand jury must depend upon the court to punish contumacious witnesses. The criminal contempt, if it be one, is contempt of the authority of the court.

In its substantive aspects, the power of a court of the United States to impose punishment for contempt of its authority is defined and limited by 18 U.S.C. § 401:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

Rule 42 of the Federal Rules of Criminal Procedure, 18 U.S.C., governs the procedural aspects of proceedings for criminal contempt in the United States district courts. Rule 42 is as follows:

"(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

"(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

When 18 U.S.C. § 401(1) includes, as a criminal contempt of the court's authority, misbehavior in the "presence" of the court, the word "presence" is used in a brooding, metaphorical sense broader than misbehavior in the "actual presence" of the judge as used in Rule 42(a). The grand jury is an arm of the court; and no doubt there may be instances of misbehavior in the grand jury room that constitute a completed offense of criminal contempt of court because committed in the "presence" of the court within that broader meaning of 18 U.S.C. § 401(1). Camarota v. United States, 3 Cir., 1940, 111 F.2d 243, 246; In re Presentment by Grand Jury of Ellison, D.C.Del.1942, 44 F.Supp. 375, 377, affirmed, 3 Cir., 1943, 133 F.2d 903, certiorari denied 1943, In re Ellison, 318 U. S. 791, 63 S.Ct. 995, 87 L.Ed. 1157. See O'Connell v. United States, 2 Cir., 1930, 40 F.2d 201, 203; Ex parte Savin, 1889, 131 U.S. 267, 277, 9 S.Ct. 699, 33 L.Ed. 150.

Thus if a person interrupts the orderly course of a grand jury proceeding by making a physical attack upon the foreman, this would certainly be misbehavior in the presence of the court, punishable as a contempt under 18 U.S.C. § 401(1). Such misbehavior need not necessarily be of a violent character; for instance, tampering with a witness about to enter the grand jury room by bribing him to

give perjurious testimony would be contumacious misconduct. See In re Presentment by Grand Jury of Ellison, supra, D.C.Del.1942, 44 F.Supp. 375. See, also, Ex parte Savin, 1889, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150.

■ But if all the witness does before the grand jury is to decline to answer a question because of a good faith, but erroneous, claim of the privilege against self-incrimination, this is not "misbehavior" constituting a completed contempt of court. "Certainly the assertion of a constitutional right if made in good faith on advice of counsel could hardly be described as such misbehavior." United States v. Greenberg, 3 Cir., 1951, 187 F.2d 35, 38. Accord: Gendron v. Burnham, 1951, 146 Me. 387, 82 A.2d 773. Even when a witness is testifying at a trial, in the actual presence of the judge, it has never been suggested, so far as we are aware, that the invocation of the privilege against self-incrimination constitutes a completed contempt if the privilege is erroneously claimed. The claim of privilege calls upon the judge to make a ruling whether the privilege was available in the circumstances presented; and if the judge thinks not, then he instructs the witness to answer. A fortiori, the same must be true where a witness before a grand jury erroneously but in good faith claims his privilege. The witness is in the grand jury room without the present aid of counsel, and with all the legal uncertainties as to when the privilege is available, when it has been "waived", etc., it would not be surprising if a witness, who knows of his Fifth Amendment privilege in a general way, makes an erroneous claim of privilege. The refusal to answer, in such a situation, is not a criminal contempt of the court's authority. The grand jury, in that event, if it desires to pursue the matter further, must call on the assistance of the court to make a ruling whether the privilege is available and to instruct the witness to go back to the jury room and answer the question if the ruling is made that the privilege was improperly claimed.

■■ Furthermore, in our opinion it is clearly to be deduced from Ex parte Hudgings, 1919, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656, and In re Michael, 1945, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30, that even where a witness before a grand jury declines to answer on account of the privilege against self-incrimination, claimed *in bad faith*, such conduct in and of itself does not constitute misbehavior in the presence of the court within the meaning of 18 U.S.C. § 401 (1). In Ex parte Hudgings a witness at a trial gave a series of "I can't remember" answers which the judge thought were obviously false; whereupon the judge committed the witness for a criminal contempt. It was held that this was not misbehavior in the presence of the court justifying summary punishment for contempt. An answer "I don't remember", when in fact the witness does remember, is nothing more than perjury, which is a separate offense in the prosecution of which the witness is entitled to the ordinary constitutional safeguards of indictment and trial by jury. Now a witness may seek to evade a direct and responsive answer to a question either by answering "I don't know", or "I don't remember" when he does know, or does remember, or by declining to answer the question on the pretended ground, known by him to be false, that a truthful answer would tend to incriminate him. The witness' conduct is just as reprehensible, whichever stratagem of evasion he employs. If a witness, being under oath, declines to answer a question on the ground that a truthful answer would tend to incriminate him, when he knows that this is not so, he has committed perjury just as much as if he had responded falsely "I don't remember." In Re Michael a grand jury witness gave responsive answers, but his answers were known by him to be false. It was held that under § 268 of the old Judicial Code, now found, without substantial change, in 18 U.S.C. § 401(1), the court could not summarily punish the witness for contempt where the misconduct consisted of nothing more than perjury. Further,

the Court in the Michael case emphasized, 326 U.S. at page 227, 66 S.Ct. at page 79, that Congress, though it has left to the court ample power to protect the administration of justice against immediate interruption of its business, has intended to safeguard constitutional procedures by limiting the contempt power to the least possible power adequate to the end proposed. "The exercise by federal courts of any broader contempt power than this would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury. It is in this Constitutional setting that we must resolve the issues here raised." We are not disposed to split hairs; the situation now under discussion is within the rationale of the Hudgings and Michael cases.

It is true enough that evasion of a direct and truthful answer may have an obvious tendency to impede and obstruct the ascertainment of the truth, and in most cases probably is so intended— whether the witness employs the stratagem of giving a direct but false answer, or of answering untruthfully that he doesn't remember, or of declining to answer on the ground, known by him to be false, that a truthful answer would tend to incriminate him. But in any such case this conduct, discreditable though it may be, is not such "misbehavior" as brings into play the contempt power of the court. As the Court said in the Michael case, 326 U.S. at page 227, 66 S. Ct. at page 80: "All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact-finding tribunal must hear both truthful and false witnesses." And it cannot make any difference, in this connection, whether the witness makes one evasive

answer or ten; in fact, depending on the circumstances, one evasive answer to a key question may be more obstructive to the ascertainment of the truth than ten evasive answers to peripheral questions.

If we are wrong in the conclusion stated in the two preceding paragraphs, this much certainly is so: Assuming that claiming the privilege in bad faith in the grand jury room may be deemed "misbehavior" in the presence of the court, the witness must be specifically put on notice that this is the criminal contempt charged, and the court cannot punish the witness for such contempt unless it finds, not only that the privilege was erroneously claimed, but also that it was claimed in bad faith.

From the foregoing it is apparent that when a witness is haled before the court on account of something that transpired in the grand jury room, the proceeding may or may not be one for criminal contempt. Since a refusal to answer a question on account of an erroneous claim of the privilege, at least where the claim is advanced in good faith, is not "misbehavior" constituting a completed criminal contempt of court, it follows that when the grand jury in that situation calls upon the assistance of the court for a ruling as to the availability of the privilege, the proceeding before the court is not at that stage a criminal contempt proceeding at all. Rule 42 of the Federal Rules of Criminal Procedure has no application, because that rule does no more than prescribe the procedure whereby the court may impose a punishment for a criminal contempt already committed. But though Rule 42 is not applicable, the constitutional requirement of due process of law makes it necessary for the judge to give the witness an adequate opportunity to be heard, and to introduce evidence, if the witness so desires, bearing on the issue whether, disregarding merely fanciful and far-fetched hypotheses, it is clearly evident from the implication of the question, in the setting in which it is asked, that a responsive answer might be dangerous because injurious disclosure could

result. See Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. As stated by Taft, J., in Ex parte Irvine, C.C.S.D.Ohio 1896, 74 F. 954, 960, quoting Wharton on Criminal Evidence § 466, the judge in appraising the claim of privilege "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." Unless such opportunity is afforded, a ruling by the judge that the privilege is unavailable is nugatory, and an order to the witness to go back and answer the question is not a "lawful" order within the meaning of 18 U.S.C. § 401(3).

What ensues when a court is called upon, not to punish a completed contempt, but merely to rule on the availability of the privilege? If the court rules that the privilege was properly invoked, that is an end of the matter. If, on the other hand, the court rules (we assume correctly, and after the necessary hearing) that the privilege was not available under the circumstances, the court would then normally instruct the witness to go back to the grand jury and answer the question. If the witness then and there, in the face of the court, declines to do so, this is disobedience to a lawful order of the court, under 18 U.S.C. § 401(3); and since this disobedience occurs in the "actual presence" of the judge it may be punished summarily under Rule 42(a). If the witness, instead of disobeying the court's order in the actual presence of the judge, proceeds back to the grand jury room and there again refuses to answer the question which the court directed him to answer, this is still disobedience of a lawful order of the court within the meaning of 18 U.S.C. § 401(3). But because such disobedience did not take place in the actual presence of the court, and thus could be made known to the court only by the taking of evidence, the court would have to conduct the proceeding in criminal contempt in accordance with Rule 42(b). See Ex parte Savin, 1889, 131 U.S. 267, 277, 9 S. Ct. 699, 33 L.Ed. 150.

It is important that the grand jury witness accurately be put on notice of the nature of the proceeding. If it is nothing more than a request by the grand jury for a ruling by the court on the availability of the privilege, then the witness should be informed that he is not being cited to answer a charge of a completed contempt of court, and he will know that the only issue to which he shall have to address himself, at the hearing before the court, is whether he was entitled to decline to answer the particular questions on the ground of his privilege against self-incrimination. The worst that could happen, if the ruling is against him, is that he would be given a second chance to go before the grand jury and answer the questions. If, on the other hand, he is being charged with misconduct in the jury room constituting misbehavior in the presence of the court, this charge must be prosecuted on notice, and under Rule 42(b) the notice "shall state the essential facts constituting the criminal contempt charged and describe it as such." If the alleged misbehavior is a sneering, insolent, disrespectful attitude manifested by the witness in the jury room, then the requisite notice must set forth the essential facts constituting such misbehavior so that the witness may frame his defense, and put in his evidence, directed to that issue. If the charge of misbehavior is that the witness deliberately obstructed the grand jury proceedings by flatly refusing to answer questions, without any pretended excuse, the notice should specifically so state. If the charge of criminal contempt is that the witness declined to answer the questions upon the pretended ground that the answers would tend to incriminate him, this claim of privilege being advanced in bad faith, then (assuming that such conduct might be deemed misbehavior in the presence of the court within the meaning of 18 U.S. C. § 401(1)) the required notice under Rule 42(b) would have to describe the alleged misbehavior in order that the witness, in preparing his defense to the charge, may direct his evidence to the is-

sue of his good faith in claiming the privilege.

 Incidentally, we note a possible ambiguity in the expression purging of contempt. If all the judge is undertaking to do is to rule on whether the privilege against self-incrimination was properly invoked as a ground for declining to answer a question in the grand jury room, then when the judge determines that the privilege was not properly invoked and instructs the witness to go back before the grand jury and answer the question, this is not giving the witness an opportunity to "purge" himself of contempt, for the simple reason that there has not yet been any completed criminal contempt. If, on the other hand, the judge is conducting a criminal contempt proceeding under Rule 42 on account of an alleged criminal contempt already committed in the jury room, the judge may, if he finds the defendant guilty of the offense charged, impose a punishment forthwith, or, in his discretion, he may withhold punishment at that point and give the defendant an opportunity to take some indicated action to "purge" himself of the completed offense and thus to stay the actual imposition of punishment.

In the light of the above preliminary discussion, we now come to the facts in the case at bar.

It appears that Carlson is known to be a bookie and gambler, with a criminal record and an unsavory reputation, and that he is reputed to have been an associate of "Specs" O'Keefe. He was summoned to appear before the grand jury investigating the Brink's robbery. At the outset the Assistant U. S. Attorney asked Carlson to sign a so-called "Waiver of Immunity", the document presented to him reciting in part that "I do hereby voluntarily waive immunity from prosecution for any offense of mine which shall be disclosed or indicated by me in so appearing and testifying or by any testimony which I may give or by any testimony or statements I may make in the presence of the said Grand Jurors." [2] After being permitted to consult with his attorney by telephone, Carlson declined to sign the waiver. This incident certainly served as a warning and reminder to Carlson of the pitfalls he was about to face because of the evident hope, if not expectation, of the U. S. Attorney that he would be able to elicit from Carlson incriminating answers having to do with the Brink's case. In the ensuing examination Carlson invoked his privilege in refusing to answer a number of questions. Among them were questions relating to his present occupation, questions relating to whether he knew "Specs" O'Keefe and certain other named underworld characters, questions seeking to elicit from him certain information which he allegedly previously had given to agents of the FBI, questions relating to a certain trip to Philadelphia, it having been reported in the press that some of the Brink's loot had been traced to Philadelphia. Maybe some of the questions which he refused to answer admitted of a truthful answer without any tendency to incriminate Carlson. But it is obvious that a vulnerable character like Carlson, having been presented with a waiver of immunity, and facing a vigorous examination in the grand jury room, without counsel at his side, might often have been in doubt as to what the U. S. Attorney was leading him into and might therefore have been apprehensive that his answers would aid somehow in building up a case of criminality against him either in connection with the Brink's case or otherwise.

In the view we take it will not be necessary for us to take up the unanswered

---

2. We are not clear what would have been the legal effect of this document had Carlson signed it. A witness does not take into the grand jury room any immunity from criminal prosecution on account of what he may disclose in his testimony; and therefore he has no immunity to waive. See United States v. Mangiaracina, D.C.W.D.Mo., 1950, 92 F.Supp. 96. If the document was meant to be an advance waiver of the privilege against self-incrimination, this intention was rather obscurely expressed.

questions one by one and to rule whether the claim of privilege was properly invoked in each instance.

Three days after this appearance of Carlson before the grand jury, the grand jurors filed in court a so-called "presentment" in which it was stated that "John Henry Carlson appeared before the Grand Jury, and did wilfully, deliberately, and contumaciously, by evasion and irresponsive answers, obstruct the process of this Court, and did obstruct justice in failing and refusing to answer proper questions in the Grand Jury proceedings". Accompanying the presentment was the official transcript of the testimony given by Carlson before the grand jury.

■ Rule 42(b) makes no provision for a presentment by the grand jury as an accepted procedure for initiating a charge of a criminal contempt already committed. In the Note of the Advisory Committee, commenting on Rule 7(a) of the Federal Rules of Criminal Procedure, it is stated that "Presentment is not included as an additional type of formal accusation, since presentments as a method of instituting prosecutions are obsolete, at least as concerns the Federal courts." See Barron, Federal Practice and Procedure (1951) § 2424. Nevertheless if such a "presentment" by the grand jury "shall state the essential facts constituting the criminal contempt charged and describe it as such", and if the court gives reasonable notice of a hearing to determine the guilt or innocence of the accused person of the criminal contempt as charged in the presentment, we have no doubt that Rule 42(b) would be deemed to have been substantially complied with. See United States v. Goldfarb, 2 Cir., 1948, 167 F.2d 735.

But in the present case the presentment did not charge in so many words that Carlson's misbehavior constituted a "criminal contempt". The "presentment", instead of being a mode of initiating a proceeding for criminal contempt, may have been no more in this case than a way, and an entirely appropriate way, for the grand jury to invoke the assistance of the court in order to obtain a ruling on the availability of the claimed privilege against self-incrimination.

■ The district court set down a hearing on the presentment, but there was a manifest ambiguity as to the nature and scope of this hearing. The government introduced in evidence the transcript of Carlson's testimony before the grand jury, and rested. At the outset counsel for appellant asked the court to rule on whether the proceeding was one in civil or criminal contempt, and the court answered somewhat evasively by saying, "the matter is properly before me under the provisions of the Code which confers upon me certain responsibilities and certain rights." The court's further comments at that point seem to imply that in the court's view the only issue before it was whether the privilege was properly claimed under the circumstances, so that if the court should decide this issue in the negative and order the witness to answer certain questions, "then there isn't any contempt until there is refusal to carry out the Court's order; isn't that right?". Later on the court, in colloquy with counsel, indicated that it was called upon to rule whether there had been a completed criminal contempt in the grand jury room. Counsel for appellant objected to the making of such a ruling under the circumstances and continued to request the court to instruct Carlson "whether or not he is without privilege on each and every question and so order him to answer."

At the conclusion of the hearing, the only finding made by the court, more or less following the language of the presentment, was the ultimate finding:

"And on the basis of all the testimony I have heard, I find that this defendant has contumaciously obstructed the process of this court and has been in contempt of its authority by evasive and irresponsive answers before the Grand Jury, and that he has refused intentionally and obdurately to assist the inquiry, and I therefore find him guilty of

contempt of the authority of this court * * *."

There was no finding that appellant committed a criminal contempt in the grand jury room by manifesting a sneering, insolent, or disrespectful attitude. Furthermore, no such misbehavior was charged in the presentment; nor was there anything in the transcript of the proceeding before the grand jury, which was all the government relied upon, which would have warranted such a finding had it been made.

Apparently the court was proceeding on the assumption that, if a witness in the grand jury room declined to answer a question on an erroneous claim of the privilege against self-incrimination, this, in itself, constituted misbehavior in the presence of the court, within the meaning of 18 U.S.C. § 401(1)—a completed and irretrievable criminal contempt of the authority of the court. As indicating this, the court remarked toward the close of the hearing that, "in view of the fact that this witness has been before the Grand Jury, and in the light of the decisions, if I find that the answers would hurt him, then of course he would be purged of contempt. But on the other hand, if I find this is a proper inquiry, then it seems to me it is my clear duty to adjudge him in contempt of court." But for the reasons already explained at length in this opinion, such an assumption was a clear error of law. The erroneous claim of the privilege, certainly if made in good faith, and we believe whether or not made in good faith, cannot in itself be deemed misbehavior in the presence of the court, within the meaning of 18 U.S.C. § 401(1), authorizing the court summarily to impose punishment for a criminal contempt. Furthermore, the court has not even found that the claim of privilege here was made in bad faith.

We are obliged, therefore, to vacate the judgment of conviction (1) not only because appellant was not adequately apprised, in substantial compliance with Rule 42(b), that he was being called to answer a specific charge of criminal con-

tempt, but also (2) because the evidence before the court was insufficient to support a finding that appellant had committed a criminal contempt of court in the course of his testimony before the grand jury.

In No. 4732, the judgment of the District Court is vacated, and the case is remanded to that Court with direction to dismiss the proceeding against John H. Carlson on the grand jury's presentment, however that proceeding may properly be characterized.

In Nos. 4733 and 4734, the appeals are dismissed as moot.