**HOOLEY v. UNITED STATES.**
**No. 4743.**

United States Court of Appeals
First Circuit.
Jan. 7, 1954.

Joseph S. Vahey, Boston, Mass., for appellant.

Charles F. Choate, Asst. U. S. Atty., Boston, Mass., (Anthony Julian, U. S. Atty., and Edward D. Hassan, Asst. U. S. Atty., Boston, Mass. with him on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is one of the companion cases, decided to-day, arising out of a federal grand jury investigation of the Brink's robbery in Boston on January 17, 1950.[1] Appellant has taken an appeal from a judgment imposing a prison sentence of nine months upon conviction of criminal contempt.

We refer to the discussion in our main opinion, in Carlson v. United States, Nos. 4732–4734, 209 F.2d 209 much of which is relevant here and will not be repeated in this opinion.

Paul J. Hooley is a brother-in-law of "Specs" O'Keefe, and the husband of Mary A. Hooley, appellant in Nos. 4737–4739, 209 F.2d 234.

On April 27, 1950, a special agent of the Federal Bureau of Investigation made application for a warrant authorizing a search of the Boston home of Mr. and Mrs. Hooley, the applicant alleging that he had reason to believe that approximately $60,000 was there being unlawfully held and possessed by Paul and Mary Hooley in violation of various sections of Title 18, U.S.Code. In an accompanying affidavit the special agent deposed that the said sum of $60,000 was believed to be part of the proceeds of the Brink's robbery, that he, the affiant, had reason to believe that the said money had been removed from the premises, counted, and afterwards returned thereto; and that the said money was then and there being concealed either in an overstuffed baby's stationary chair and footstool or in a leather zipper overnight bag. On the same day the search warrant was issued by the United States Commissioner as requested. The return to the warrant recited that the search was executed on the late afternoon of the day it was issued "and nothing was found to be seized."

Subsequently, Paul J. Hooley was duly summoned to appear as a witness before the grand jury investigating the Brink's robbery. He appeared early in December, 1952, and was examined at length in the presence of the grand jury by an Assistant United States Attorney. To a great many of the questions he answered directly and responsively, but there were a suspiciously large number of questions to which his answers were of the "I don't remember"

1. The other opinions in this group of cases are in Carlson v. United States, No. 4732, 1 Cir., 209 F.2d 209; O'Keefe v. United States, 1 Cir., 209 F.2d 223; Maffie v. United States, 1 Cir., 209 F.2d 225; Daly v. United States, 1 Cir., 209 F.2d 232; and Hooley v. United States, No. 4737, 1 Cir., 209 F.2d 234.

variety; and reading the cold print of the transcript of his testimony one might warrantably infer that at least in some of these instances he must have known and remembered about the matters inquired about, so that his avoidance of a direct and responsive answer under the pretext advanced was a purposeful evasion. In addition to that, Hooley declined to answer several questions under his privilege against self-incrimination. These were (1) whether he had purchased a television set which was found in his home on the night of the FBI raid above mentioned, and what had happened to this set subsequent to the raid; (2) what he had told the FBI about the television set; (3) the amount of money he kept secreted in a red leather chair in his home; (4) how recently he had kept money secreted in this red leather chair; (5) whether or not he had a joint bank account at the Shawmut National Bank with his wife Mary Hooley, and (6) whether or not he currently had a safe deposit box. Bearing in mind the recital of facts which was the basis of the application for the search warrant above mentioned, it could hardly be concluded, at least in respect of some of the questions, that a responsive answer clearly could not result in an incriminating disclosure. See Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. Maybe as to some of the questions the privilege was erroneously claimed; but as explained in our opinion in Carlson v. United States, such conduct in the grand jury room is not a completed criminal contempt of court.

On December 8, 1952, the grand jury filed in the court a "presentment" reciting that Paul J. Hooley "did wilfully, deliberately, and contumaciously, by evasion and irresponsive answers, obstruct the process of this Court, and did obstruct justice in failing and refusing to answer proper questions in the Grand Jury proceedings".

The court gave notice of a hearing on the grand jury presentment, but as in the Carlson case there was an inherent ambiguity as to the nature and scope of this scheduled hearing. The presentment did not charge, in so many words, that Hooley had already committed a "criminal contempt" of court in his appearance before the grand jury, and the presentment may have been no more, in effect, than a request by the grand jury for a ruling by the court on the availability of the privilege against self-incrimination with respect to the particular questions which Hooley had declined to answer on that ground. But we do not rest our decision on the ground that Hooley had not been adequately apprised, in substantial compliance with Rule 42 (b), that he was being called to answer a specific charge of an already completed criminal contempt. Hooley has not claimed, as did Carlson, that he was prejudicially affected by the failure of the court substantially to follow the procedure laid down in Rule 42(b). Throughout the hearing it was evident that the court understood, and counsel for Hooley understood, that the proceeding was one in criminal contempt, in which the court was to determine whether Hooley had already committed such offense in the course of his appearance before the grand jury.

It is true that at various points the court expressed a willingness to afford Hooley an opportunity to make his peace by appearing again before the grand jury and answering the questions to which he had not given satisfactory responses. The court said, "what I am going to do is give him a chance to purge himself of contempt." Hooley did not avail himself of this opportunity, and the hearing proceeded. This is all entirely consistent with the assumption that the hearing was on a charge of an already completed criminal contempt, for as stated in the Carlson opinion, even in such a proceeding the court may, in its discretion, give the defendant an opportunity to take some indicated action to purge himself of the completed offense and thus to stay the actual imposition of punishment. The court did not order the defendant to go back and testify further before the grand jury, and it appears

clearly enough from the record that the court did not base its ultimate judgment of conviction upon a disobedience by Hooley, in the face of the judge, of an order to go back and testify, which would have come under 18 U.S.C. § 401(3).

The only evidence introduced by the prosecution, in support of the charge of criminal contempt committed in the grand jury room, was the stenographic transcript of Hooley's testimony before the grand jury. Throughout the hearing, it appears that the court was particularly concerned with the indications of deliberately evasive and irresponsive "I don't remember" answers where, in the view of the court, the witness must have known and remembered the matters inquired about. The court gave little consideration to the specific questions which Hooley had declined to answer on the ground of his privilege against self-incrimination, and did not undertake to rule whether the privilege had been improperly claimed in each of these instances.

Counsel for Hooley requested the court to rule "as to the questions which were proper questions and contained in this transcript and questions which the defendant, Paul Hooley, refused to answer before the Grand Jury". To this the court responded: "I am going to rule on that whole transcript." And later the court explained: "The thing I have to determine is whether or not this man has deliberately and willfully obstructed the processes of the court in not answering truthfully and fully the proper questions put to him in the proceedings before the Grand Jury."

The ultimate, and indeed the only, finding made by the court is as follows:

"I am compelled, therefore, to find you have been guilty of contumacious conduct or conduct in keeping with the allegations set up in this presentment which is nothing more or less than a complaint to me and that you have done this in the matter of a hearing of the United States versus John Doe and done it by reason of giving evasive and irresponsive answers to proper questions, all

of which are questions and answers which you have had a chance to go back and answer and I therefore adjudge you have been in contempt of the authority of this court."

■ Assuming that in the course of the grand jury examination Hooley may have evaded direct and responsive answers in many instances, either by responding that he didn't remember or by erroneously claiming the privilege against self-incrimination, we hold, for reasons explained in the Carlson opinion, that such conduct in the grand jury room does not amount to misbehavior in the presence of the court which may be punished summarily as a criminal contempt under 18 U.S.C. § 401(1). There is nothing in the transcript of Hooley's testimony before the grand jury which would sustain the finding of criminal contempt.

But even if Hooley's alleged evasive answers might have amounted to a criminal contempt, there was a fatal procedural error at the hearing before the court which would necessitate a reversal of the judgment of conviction.

■■ The accused defendant is entitled to a hearing, as provided in Rule 42(b), before the court makes a ruling of criminal contempt based upon the cold transcript of the grand jury examination. A hearing necessarily implies a reasonable opportunity to the accused to introduce evidence relative to the issue. See Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; In re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682. If, for instance, the theory of the charge is that the accused committed a criminal contempt by evasive answers on the specious pretext that he did not remember, the accused is certainly entitled to testify before the court to facts tending to explain his answers and tending to sustain his claim that truthfully he did not remember. Instead of relying upon impressions derived from reading the transcript of the grand jury examination, the court thus has an opportunity to observe the demeanor of the accused in the witness chair, and on

that basis to form a personal judgment as to his credibility and truthfulness.

At the court hearing in the case at bar, after the government had introduced the grand jury transcript, and rested, counsel for the defendant called the defendant as a witness. Thereupon the court announced: "I will not permit any questions to be asked which deal with the allegations of contumaciousness or evasiveness before the Grand Jury. I will not substitute myself for the Grand Jury. What do you expect to prove by this man?". Counsel responded that it was his intention "to ask Mr. Hooley to explain his answers to each and every question contained in this transcript, starting with page 488 and proceeding—", at which point the court interjected:

> "Then I would be on these cases six months. On that situation I will save your rights. I have given him a chance; he knows what the answers are and it is for me to say whether or not under all the circumstances—I haven't made up my mind —it is for me to say whether or not it comes within the purview of that which is before the Court, namely that he didn't give answers by evasiveness or by other methods. That is the answer to that. He can correct himself to the Grand Jury. I don't know his reasons. Let him go down and state his reasons to the Grand Jury. I am perfectly willing to give him that chance."

It seems to us clear that the court committed a serious procedural error in thus declining to permit the defendant to testify in his own behalf. If this were the only error, the case would go back for another hearing. But in view of the other point, previously discussed, the contempt proceeding will have to be dismissed.

The judgment of the District Court is vacated and the case is remanded with direction to that Court to dismiss the criminal contempt proceeding against Paul J. Hooley on the grand jury's presentment.