**UNITED STATES of America,**
**Appellee,**

v.

**Joseph CURCIO, Defendant-Appellant.**

**No. 385, Docket 24105.**

United States Court of Appeals
Second Circuit.

Argued May 14 and 15, 1956.
Decided June 5, 1956.

Arnold Cohen, New York City (Samuel Mezansky, New York City, of counsel), for appellant.

Paul W. Williams, U. S. Atty., for the Southern Dist. of New York, New York City (Arthur H. Christy, Herbert M. Wachtell, New York City, Fioravante G. Perrotta, Lynbrook, and Charles H. Miller, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

On March 29, 1956, a Special Grand Jury was impanelled in the Southern District of New York to investigate charges of racketeering in the garment and trucking industries. Appellant, Secretary-Treasurer of Local 269 of the International Brotherhood of Teamsters, having been duly served with a personal subpoena, and a subpoena *duces tecum* calling for the production of certain books and records of the union, failed to produce the books and records and refused to answer questions as to their whereabouts, claiming an alleged privilege under the Fifth Amendment and asserting that answers to the questions might tend to incriminate him. For such refusal he was adjudged guilty of a criminal contempt, pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and sentenced to imprisonment for six months, unless he sooner purged himself by answering the questions. From the order containing such adjudi-

cation and commitment defendant appeals.

On his first appearance before the Grand Jury on Tuesday, April 10, 1956, in response to the subpoenas, appellant refused to answer any questions whatever, stating that he had not consulted a lawyer and that he would not testify until he had done so. The matter was put over to Thursday, April 12, 1956, when appellant arrived with his counsel, who remained in the anteroom of the Grand Jury during the time of appellant's interrogation. The full record of what occurred has been released and is on file but is not part of the record before us. It does appear, however, that appellant was determined to give no information whatever concerning the whereabouts of the books and records, although he readily admitted that there were such books and records and that he was Secretary-Treasurer of Local 269. He did testify that these books and records were not in his possession either at the time of the service of the subpoena duces tecum (Monday, April 9), or at the time of his appearance before the Grand Jury (Thursday, April 12).

Accordingly, on April 17, the Assistant United States Attorney in charge of the interrogation of Curcio brought the matter of his recalcitrance before the District Judge for a determination of whether or not the Fifth Amendment plea should be sustained or overruled. The court reporter who had been present before the Grand Jury identified his stenotype tape of some fifteen questions addressed to appellant relative to the whereabouts of the books and records and his refusals to answer any of them. Appellant's counsel was present. His first move was to request that "the witness be furnished with a copy once the minutes are transcribed of the questions which are the subject in issue at the present time." The reporter then testified at length to the record of what occurred before the Grand Jury, giving the text of the fifteen questions and whatever was said in reference thereto by appellant, by the foreman of the Grand Jury and by the Assistant United States Attorney conducting the examination of appellant.

The questions were:

"Q. I am going to ask you some questions, including some that were put to you on Thursday which you declined to answer. Referring to the books and records of Local 269 of the International Brotherhood of Teamsters, have you at any time been in custody of those books and records?

"Q. Mr. Curcio, have you ever had possession of the books and records of this local?

"Q. Did you have custody and control of these records last Thursday?

"Q. Do you have possession of those records or any of them today?

"Q. Do you have custody and control of any of those records today?

"Q. Where are any of those records today, if you know?

"Q. Who has any of those records today, if you know?

"Q. Where were any of these records or all of these records a week ago Thursday?

"Q. Where were any or all of these records a week ago Saturday?

"Q. Where were any or all of these records a week ago yesterday, Monday?

"Q. Where were any or all of these records this past Thursday?

"Q. Where are any or all of these records today?

"Q. Who, if you know, had any or all of these records a week ago Saturday?

"Q. Who had any or all of these records a week ago yesterday?

"Q. Who had any or all of these records today?"

There was extended argument, principally by appellant's counsel, on the subject of whether or not there was any

plausible basis for appellant's claim that answers to the questions might tend to incriminate him. The principal contention was:

"I am telling the Court in good conscience that he is asserting the Fifth Amendment because in his mind there is some doubt as to whether or not any of these answers might incriminate him by conspiracy, by association, or by any other subsequent action that the United States Attorney's office might start."

Reference was also made in a vague way to a civil litigation "going on on the 15th floor," which was a trial of a controversy between Martin T. Lacey and John J. O'Rourke over an election to the presidency of the Teamsters Joint Council. Lacey had charged that O'Rourke and his adherents, or some of them, were mixed up with gangsters and racketeers. Some photostats of newspaper clippings relating to the Lacey-O'Rourke controversy and also to a so-called drive against "city rackets" by the federal and local prosecutors, are contained in appellant's Appendix. But, so far as we can make out, there is nothing in the record before us to indicate that appellant is connected with or suspected of being connected with any crime.

At the close of an extended argument the court directed appellant to answer each of the fifteen questions and the Assistant United States Attorney stated "for the record" that there were other questions, not relating to the books and records, which appellant had refused to answer and, with the approval of the court, these were reserved for "some future date," should the government desire rulings thereon. No objection to this procedure was made by appellant's counsel who merely requested an opportunity to consult with his client before appellant returned to the Grand Jury room; and this request was granted.

On April 19, 1956, appellant returned to the Grand Jury and persisted in his refusal to answer any of the questions pertaining to the whereabouts of the books and records. Appellant was brought before the court and, after some further argument to which reference will be made shortly, the Court in the presence of the Grand Jury directed appellant again to answer the questions. Upon his refusal to do so he was adjudged in contempt.

Appellant claims that he was not afforded a hearing as required by law, that he was not furnished with a full copy of the minutes of the Grand Jury proceedings during his interrogation on April 10 and April 12, and that he was justified in refusing to answer the questions.

■ We find no defect in the procedure followed here, which follows the pattern long in vogue in this Circuit. See United States v. Trock, 2 Cir., 232 F.2d 839. Appellant did have a full and fair hearing on April 17. The subject matter of this hearing was the exercise of his alleged constitutional right under the Fifth Amendment. Both appellant and his counsel were afforded every opportunity to produce any evidence, by appellant or by others, which might tend to show that there was a plausible basis for the claim of privilege. But nothing was said about any witnesses nor can we find any basis whatever for appellant's alleged fear that he might be "trapped," as he expressed it.

■ The requests for "a list of specifications," for a transcript of the testimony of appellant before the Grand Jury on April 12, and for "a reasonable time to prepare the defense" and "have it supported by witnesses or any other documents that I may feel are relevant or material to the defense of contempt in a contempt proceeding," were all made on April 19, after appellant had again refused to answer the questions. These demands were evidently based upon a misconception of the function of the proceedings which had already taken place on April 17, or they constituted a last ditch effort to delay the proceedings. There is no indication as to who the witnesses were or what would be the subject of their testimony. Perhaps counsel did

not anticipate that the court would without further ado, and in the presence of the Grand Jury, himself put the questions to the witness and direct him to answer. But that is what took place; and the refusals to answer thus clearly constituted a criminal contempt "in the actual presence of the court", to be punished summarily, as provided in Rule 42 (a) of the Federal Rules of Criminal Procedure. No hearing on this phase of the matter was required or necessary; nor could a hearing have served any useful purpose.

Nothing to the contrary was held by the First Circuit in Carlson v. United States, 209 F.2d 209, or in Hooley v. United States, 209 F.2d 219. Had the Grand Jury merely cited or presented appellant to the court, for his refusals before the Grand Jury to answer questions in accordance with the prior directions of the court, an entirely different situation would have been presented. Had that been the case here the contempt would not have been committed "in the actual presence of the court."

■ Nor do appellant's contentions find support in United States v. Zwillman, 2 Cir., 108 F.2d 802. That was also a case where the alleged contempt had been committed in the presence of the Grand Jury, not in the presence of the court. At the hearing which covered the entire matter, including such argument or evidence as had relevancy to defendant's claim of privilege under the Fifth Amendment, counsel asserted that a scrutiny of the Grand Jury minutes of defendant's interrogation would reveal the fact that he had been engaged in the liquor business before the repeal of the Eighteenth Amendment, and he also proffered witnesses on the subject. As the questions which Zwillman refused to answer sought to elicit the names of his business associates in the years 1928 to 1932, it was held that there had been a curtailment of his right to "show that he was likely to be endangered by answering," and the contempt adjudication was reversed. Here the very contrary appears. There was a hearing at which appellant was given the fullest opportunity to "show that he was likely to be endangered by answering," and he failed to do so. At the hearing on April 17 there was no intimation that anything said by appellant in his so-called testimony before the Grand Jury on April 12 had any bearing on his refusals to answer the questions concerning the whereabouts of the books and records, nor was any such suggestion made at any time. Appellant was in constant consultation with his counsel during the entire period of his appearance before the Grand Jury on April 12, and it is reasonable to suppose that counsel would have directed the attention of the court to any part of such interrogation which might be claimed to support the alleged privilege, as was done in the Zwillman case. Mere vague and belated demands such as we have in this record are plainly insufficient.

It should be unnecessary to add that counsel's suggestion, just before the court propounded the questions to appellant for the last time, that he inform the court confidentially, and in the absence of the Grand Jury, of "exactly what is in my mind, and most likely in my client's mind," added nothing of significance to the record.

■■ On the merits we think the case too clear for reasonable debate. In United States v. White, 322 U.S. 694, at page 699, 64 S.Ct. 1248, at page 1251, 88 L.Ed. 1542, the Supreme Court refused to recognize a claim of privilege asserted by a labor union official with respect to certain records of the union in his possession because, as the Court stated:

"(T)he official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally."

This requirement to produce would be no more than an empty and meaningless form of words if the lawful custodian of the records could hand over possession to another and then refuse to say when or where he had last seen them on the ground that any testimony on the subject would tend to incriminate him. To sustain the privilege here asserted would provide an easy method by which any investigation could be hamstrung from the start.

Although there is nothing before us to show that appellant has had any dealings with racketeers or extortionists, we may assume that Local 269 is in some way involved in the controversy between Lacey and O'Rourke and that he has or has had some contact with O'Rourke, who, we are told, has been charged with seeking the presidency of the Teamsters Joint Council through the acts of gangsters and racketeers. We are nevertheless at a loss to see how appellant's answers to any of the fifteen questions here propounded can have any tendency to incriminate him.

It is said that he has a criminal record. But what of that? We are not informed of the nature of the charge upon which he was convicted nor of the date thereof; nor have we any reason to suppose that there is any connection between the whereabouts of the books and records of Local 269 and the crime or crimes which appellant is said to have committed.

It seems to be supposed by counsel that notorious criminals, racketeers and unsavory characters generally have an open sesame to the privilege guaranteed by the Fifth Amendment. But we can draw no such inference from the rulings made in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, and United States v. Doto, 2 Cir., 205 F.2d 416, strongly relied upon by appellant. It is not the general reputation or criminal record of the witness which controls but rather the circumstances of each particular case. The constitutional rights of the so-called "little fellow" are entitled to no less protection than are the rights of those who pursue a career of crime in the grand manner. The test is whether or not on the record before the court defendant has made a showing "that he was likely to be endangered by answering [the questions]." United States v. Zwillman, supra [108 F.2d 803]. We can find no such showing here.

United States v. Trock, 2 Cir., 232 F. 2d 839, is especially urged upon us as in some way supporting appellant's contentions. But there is no similarity whatever between the two cases. Here there is, at most, atmosphere, which will not suffice.

Affirmed.