**In re GRAND JURY SUBPOENA DATED APRIL 9, 1996.**

**No. FGJ 96–02 (MIA).**

United States District Court, S.D. Florida.

May 10, 1996.

---

Robert Bondi, Asst. U.S. Atty., Miami, Florida, for the Government.

Dennis G. Kainen, Miami, Florida, for the Witness.

---

*ORDER DENYING MOTION TO QUASH GRAND JURY SUBPOENA AND ORDER HOLDING WITNESS IN CIVIL CONTEMPT*

MORENO, District Judge.

THIS CAUSE came before the Court upon the Witness' Motion to Quash Grand Jury Subpoena, filed on May 2, 1996. A hearing on the motion was held in a closed courtroom before the undersigned, United States District Judge Moreno, on May 3, 1996, and further *in camera* arguments were heard on May 8 and May 9, 1996.

THE COURT has considered the motion and the oral arguments asserted by counsel, and being otherwise fully advised in the premises, it is

ADJUDGED that the Witness' Motion to Quash Grand Jury Subpoena is DENIED. The Witness is ordered as a records custodian to produce the subpoenaed records, or if she does not have such records, to identify the location of the subpoenaed records. Because the records custodian has failed to comply with this order, she is ordered detained in civil contempt until there is compliance. However, the Court STAYS the surrender date until July 1, 1996, in order to allow for an expedited appeal.

**PROCEDURAL BACKGROUND**

On April 9, 1996, a federal grand jury for the Southern District of Florida issued two subpoenas; one subpoena was directed to the Witness in her individual capacity, and required her to appear and testify before the grand jury on April 26, 1996 as an individual. The second subpoena was directed to the Custodian of Records, and required the Witness, in her capacity as the records custodian, to appear and testify before the grand jury and to produce specific corporate documents, on April 26, 1996.

The Witness filed a Motion to Quash the Grand Jury Subpoena on May 2, 1996, directed only to the subpoena served on the Witness as the Custodian of Records of the named corporation, since the Government agrees that the Witness may assert her Fifth Amendment privilege as to the subpoena issued to her individually. In her motion, the Witness asserts that: (1) she does not have in her possession any of the records called for in the subpoena issued to the Custodian of Records, with its attachment, that was served upon her; and (2) if she is questioned as to who has possession of the records, she would be required to provide testimony to the grand jury, and would therefore invoke her Fifth Amendment privilege and refuse to answer. The Witness' primary claim is that testifying as to the whereabouts of the documents which she failed to produce could tend to incriminate her, and therefore, she may assert her Fifth Amendment privilege not to give oral testimony, even in her capacity as a records custodian.

On May 3, 1996, when called before the grand jury to testify and produce documents as the records custodian for the named corporation, the Witness claimed that the requested documents were not in her possession. In response to the Government's questions regarding the location of the subpoenaed records, the Witness asserted her Fifth Amendment privilege and refused to answer any further questions as to the whereabouts of the documents.

This Court held a hearing on the Witness' motion on May 3, 1996, and heard further argument from the Witness and the Government on May 8, 1996. At the conclusion of

the hearing on May 8, 1996, this Court denied the Witness' Motion to Quash the Grand Jury Subpoena, and ordered the Witness to answer the questions posed by the Government regarding the location of the subpoenaed documents. The Court granted the Witness' request to consult with her lawyer as to what position she would take now that she has been ordered by the Court to produce the records or indicate their location. On May 9, 1996, the Witness refused to comply and this Court found her in civil contempt, ordering her detention until full compliance until the expiration of the grand jury's term of service. However, because the Court finds that the distinction between the rights of a corporate records custodian versus that same individual's personal rights is not absolutely clear, the contempt order is stayed until July 1, 1996, in order to allow the Eleventh Circuit Court of Appeals to hear the announced expedited appeal.

### *LEGAL ANALYSIS*

■ The issue presented is whether a records custodian, when served with a grand jury subpoena in her representative capacity for the production of certain corporate documents which she claims are not in her possession, may assert her personal Fifth Amendment privilege not to give oral testimony as to the location of the documents? The Court finds that the Witness cannot assert such a privilege.

The Government argues that the records custodian, when subpoenaed as a custodian of the corporation, must answer questions regarding the whereabouts of the corporate documents which were the subject of the subpoena. The Witness asserts that she is not the records custodian of the named corporation. However, according to the Florida Secretary of State's office, this Witness has been the sole officer and sole director of the named corporation. She is the only person known to the Government to represent the corporation, and the only person that the Government may subpoena as a records custodian. Therefore, for the purposes of this proceeding, the Court finds that the Witness is the records custodian. According to the Government, the Witness may not assert her

personal Fifth Amendment privilege against self-incrimination when appearing under a subpoena issued to the "Records Custodian" as the representative of the named corporation. The Government points out that the Fifth Amendment privilege is only available to the witness when she is appearing before the grand jury pursuant to the subpoena issued to her as an *individual.*

■ The Government asserts that its position is supported by *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), where the Supreme Court held that a custodian of corporate records may not resist a subpoena for such records on the ground that the act of production will incriminate him in violation of the Fifth Amendment. The Court noted that, "for Fifth Amendment purposes a corporate custodian acts in a representative capacity when he produces corporate documents under the compulsion of a subpoena." *Braswell,* 487 U.S. at 115, n. 7, 108 S.Ct. at 2294, n. 7. Because a corporate representative may not invoke her personal Fifth Amendment privilege to shield corporate records from a subpoena, the Government argues that this includes responding to questions as to the location of the documents when the custodian fails to comply with such a subpoena. Here, the Witness had been subpoenaed simultaneously in her representative capacity as the records custodian and individually. The Government does not quarrel with her assertion of the Fifth Amendment privilege to the subpoena issued as an individual. However, the Government argues that she is not entitled to protect the corporate records through her personal Fifth Amendment privilege. The Court agrees.

The Witness maintains that the Supreme Court's opinion in *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), is directly on point with the issue before the Court. In *Curcio,* the secretary-treasurer of a local union was subpoenaed to appear before the grand jury pursuant to a personal subpoena *ad testificandum,* and was also subpoenaed to produce the union's books and records pursuant to a subpoena *duces tecum* addressed to him in his capacity as

secretary-treasurer of Local 269. He appeared before the grand jury, but failed to produce the demanded books and records. Furthermore, he testified that the union had books and records, but that they were not in his possession at that time, and refused, on the ground of self incrimination, to answer any questions pertaining to the whereabouts of the documents he failed to produce. The secretary-treasurer was held in *criminal* contempt for his refusal to answer these questions pursuant to the personal subpoena *ad testificandum.*

The Supreme Court held that the secretary-treasurer could invoke his personal privilege against self-incrimination as to questions regarding the whereabouts of the missing union books and records which had been subpoenaed but not produced. The Court reasoned that he could not lawfully be compelled, in absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony. *See Curcio,* 354 U.S. at 124, 77 S.Ct. at 1149–50. The Court's ruling related to the petitioner's failure to answer questions pursuant to the *personal* subpoena *ad testificandum.* However, the Court noted that the petitioner might have been proceeded against for his failure to produce the records demanded by the subpoena *duces tecum,* which was issued to him in his representative capacity. *Id.* at 127, 77 S.Ct. at 1151.

The Witness argues that *Braswell* recognizes the line drawn in *Curcio* between oral testimony and other forms of incrimination. The Witness asserts that these cases make it clear that a records custodian does not have a Fifth Amendment privilege to resist a subpoena for the production of records that are in her custody, but that she may assert her Fifth Amendment privilege and refuse to testify regarding subpoenaed records which are not in her possession.

 The Government distinguishes *Curcio* from the present matter, arguing that in *Curcio* the witness was called before the grand jury to testify about the records pursuant to a *personal* subpoena, and not in his capacity as the records custodian. At the outset of the *Curcio* opinion, the Supreme Court made clear that "[t]his conviction re-

lated solely to petitioner's failure to answer questions asked pursuant to the *personal subpoena* ad testificandum." *See Curcio,* 354 U.S. at 121, 77 S.Ct. at 1148 (emphasis added). The Government concedes that the witness does have a Fifth Amendment privilege not to testify as to the whereabouts of the records when subpoenaed in her individual capacity, but that she may assert no such privilege here, where she was appearing pursuant to a subpoena issued to the records custodian and *only* officer and director of the named corporation. The Court agrees.

The Court acknowledges that this issue presents a very close question, as to whether a records custodian, and sole corporate officer, can be compelled to answer questions before a grand jury as to the location of records she failed to produce, when appearing pursuant to a records custodian subpoena. It has long been established that a corporation has no Fifth Amendment privilege to refuse to produce its records. *E.g., Hale v. Henkel,* 201 U.S. 43, 74, 26 S.Ct. 370, 378–379, 50 L.Ed. 652 (1906). Furthermore, a corporate custodian of records cannot resist a subpoena for corporate records by invoking her own personal Fifth Amendment privilege. *Braswell v. United States,* 487 U.S. 99, 111–112, 108 S.Ct. 2284, 2291–2292, 101 L.Ed.2d 98 (1988); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Dreier v. United States,* 221 U.S. 394, 400, 31 S.Ct. 550, 550, 55 L.Ed. 784 (1911); *Wilson v. United States,* 221 U.S. 361, 385, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911). Compliance with the subpoena is required, even though the books have been kept by the person subpoenaed and the act of production may be personally incriminating. *Braswell,* 487 U.S. at 111–112, 108 S.Ct. at 2291–2292; *Fisher v. United States,* 425 U.S. 391, 413, n. 14, 96 S.Ct. 1569, 1582, n. 14, 48 L.Ed.2d 39 (1976); *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974).

 Moreover, it is also established that a custodian who has been required by subpoena to produce corporate documents may also be required, by oral testimony, to identify or authenticate the documents. *See Curcio,* 354 U.S. at 124–125, 77 S.Ct. at 1149–1150; *See*

*also Braswell,* 487 U.S. at 114–115, 108 S.Ct. at 2293–2294. According to the Court in *Curcio,* this testimony merely makes explicit what is implicit in the production itself, that the documents produced are those demanded by the subpoena. *Curcio,* 354 U.S. at 125, 77 S.Ct. at 1150. However, a custodian has no Fifth Amendment privilege to refuse to produce and orally identify and authenticate such documents, although the documents may incriminate him and may later be used against him. *See Braswell,* 487 U.S. at 112, 108 S.Ct. at 2292; *Fisher,* 425 U.S. at 413, 96 S.Ct. at 1582. Despite this possibility of self-incrimination, "one in control of the records of an artificial organization undertakes an obligation with respect to those records foreclosing any exercise of his privilege." *Fisher,* 425 U.S. at 429–430, 96 S.Ct. at 1590. This holding is more compelling here where the witness is the sole corporate officer and director.

Courts have consistently failed to recognize a self-incrimination issue with the testimonial act of production and identification pursuant to a subpoena duces tecum. *See Braswell,* 487 U.S. 99, 108 S.Ct. 2284; *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Fisher,* 425 U.S. at 430, 96 S.Ct. at 1590; *Curcio,* 354 U.S. at 127, n. 7, 77 S.Ct. at 1151, n. 7. These decisions reflect the view that the Fifth Amendment privilege is a purely personal one, which cannot be asserted to protect a corporation. As the Court reasoned in *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), "individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations." *Id.* at 699, 64 S.Ct. at 1251. Accordingly, because an artificial entity may not utilize the personal privilege against compulsory self-incrimination, an individual acting in his official capacity on behalf of such an entity may likewise not

take advantage of his personal privilege. *See Id.* at 700, 64 S.Ct. at 1251–1252; *See also Bellis,* 417 U.S. at 90, 94 S.Ct. at 2184. Because a records custodian, such as the Witness, acts for the corporation when responding to a subpoena for corporate documents, "recognizing the individual claim of privilege with respect to the records of the corporation would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege." *Braswell,* 487 U.S. at 115–116, 108 S.Ct. at 2294, quoting *Bellis,* 417 U.S. at 90, 94 S.Ct. at 2184.

The Court applies this reasoning to the present situation, where the records custodian, appearing pursuant to a subpoena in her representative capacity, fails to produce corporate documents and refuses to answer questions as to their location by asserting her Fifth Amendment privilege. In her representative capacity, the records custodian may not utilize her personal Fifth Amendment privilege and must testify as to the location of the corporate documents. Under such a subpoena, the records custodian would be testifying on behalf of the corporation and not as an individual. As Chief Justice Rehnquist noted in *Braswell,* allowing a records custodian to assert her personal Fifth Amendment privilege, "... would have a detrimental impact on the Government's efforts to prosecute 'white collar crime,' one of the most serious problems confronting law enforcement authorities." *Braswell,* 487 U.S. at 115, 108 S.Ct. at 2294. The Court continued, "If custodians could assert a privilege, authorities would be stymied not only in their enforcement efforts against those individuals but also in their prosecutions of organizations." *Id.* at 116, 108 S.Ct. at 2294.

However, this Court recognizes, as did the *Braswell* Court, that because the custodian's act of production, or in this case testifying as to their location, can be personally incriminating, certain consequences flow from the fact that such production or testimony is in the custodian's representative rather than personal capacity.[1] *Braswell,* 487 U.S. at 117–

---

1. The self-incrimination problem here is eliminated if the Government grants Witness statutory immunity for her testimony. But as the *Braswell*

Court acknowledged, this "solution" has significant drawbacks if the Government has any intention of prosecuting the custodian, as her testimo-

118, 108 S.Ct. at 2294–2295. The custodian is acting as a representative, therefore, the act is deemed one of the corporation's and not of the individual. Accordingly, the *Braswell* Court acknowledged that the Government may make no evidentiary use of the "individual act" against the individual, but may use the corporation's act of production against the custodian. *Id.* at 118, 108 S.Ct. at 2295. The *Braswell* Court explained that because the jury is not told that the individual defendant produced the documents, any nexus it infers between the defendant and the documents results solely from the corporation's act of production and the other evidence in the case. *Id.* at 118, 108 S.Ct. at 2295.

The concerns facing this Court are the same concerns that were faced by the Second Circuit when it affirmed the District Court's criminal contempt order in *United States v. Curcio,* 234 F.2d 470 (1956). The Second Circuit recognized that,

> [t]his requirement to produce would be no more than an empty and meaningless form of words if the lawful custodian of the records could hand over possession to another and then refuse to say when or where he had last seen them on the ground that any testimony on the subject would tend to incriminate him. To sustain the privilege here asserted would provide an easy method by which any investigation could be hamstrung from the start.

*Id.* at 475. Although the Second Circuit was subsequently reversed by the Supreme Court, this Court thinks it is significant that the records custodian in *Curcio* asserted his Fifth Amendment privilege and refused to answer questions regarding the whereabouts of the documents pursuant to a *personal subpoena ad testificandum,* and subsequently was found in criminal contempt. In fact, the petitioner in *Curcio* "... later did produce for the grand jury certain books and

records of the union when threatened with a commitment for contempt for his failure to comply with a subsequent subpoena duces tecum issued to him in his representative capacity." *Curcio,* 354 U.S. at 128, n. 7, 77 S.Ct. at 1152, n. 7. Although throughout the *Curcio* opinion the Court refers to the privilege of the "custodian" not to incriminate himself by his own oral testimony, this Court's interpretation is that the *Curcio* Court was referring to the custodian as an individual, and not as a representative of the corporation.[2]

## CONCLUSION

For the reasons addressed above, this Court finds that a records custodian, when subpoenaed on behalf of the corporation, may not assert her personal Fifth Amendment privilege in order to protect the location of the corporate documents. In such a case, the records custodian must answer the questions posed by the Government regarding the *location* of the subpoenaed documents. A corporation has no Fifth Amendment privilege to refuse to answer questions regarding the whereabouts of its documents, therefore, it is

ADJUDGED that the Witness' Motion to Quash Grand Jury Subpoena is DENIED and the Witness is ordered to testify as to the location of the corporate documents. As the Witness has refused to obey this Court's Order and answer the limited questions as to the location of the documents, it is

ADJUDGED that the Witness is held in civil contempt for her failure to obey the Court's Order directing her to produce the corporate records or to testify as to the location of the documents pursuant to the subpoena issued to her as the Records Custodian. As the Witness announced in Chambers on May 9, 1996 her intention to appeal, and because this Court finds that such appeal presents a substantial question of law, this

---

ny could not be used directly or derivatively against her. *See Braswell,* 487 U.S. at 117, 108 S.Ct. at 2294–2295.

**2.** In *Haner v. United States,* 440 U.S. 1308, 99 S.Ct. 1485, 59 L.Ed.2d 762 (1979), in denying an application for certiorari, the Supreme Court summarized the *Curcio* opinion as holding that

the contempt sanction cannot be used to compel a custodian to disclose the whereabouts of books and records he fails to produce if disclosure of their location will incriminate him. However, this was in reference to a custodian in his "individual" capacity, and not as the corporate representative.

Order of Contempt will be STAYED until July 1, 1996, at which time the Witness will surrender into the custody of the United States Marshals until such time as she obeys this Court's Order.

DONE and ORDERED.