George **SQUILLACOTE**, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

**LOCAL 248, MEAT & ALLIED FOOD WORKERS**, affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Respondent.

**Civ. A. No. 75–C–64.**

United States District Court,
E. D. Wisconsin,
Milwaukee Division.

March 21, 1975.

☜518

Philip E. Bloedorn, NLRB Thirtieth Region, Milwaukee, Wis., for petitioner.

Russell Woody, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for respondent.

## DECISION AND ORDER

WARREN, District Judge.

The Regional Director for the Thirtieth Region of the National Labor Relations Board (hereinafter "Board") has petitioned this Court for temporary injunctive relief pursuant to Section 10(j) of the National Labor Relations Act, as amended (hereinafter "Act"), 29 U.S.C. § 160(j), pending final disposition of charges filed by the Milwaukee Independent Meat Packers Association (hereinafter "association") alleging that the respondent union has engaged in unfair labor practices involving strike misconduct.

The petition was filed subsequent to the issuance of a complaint as provided in Section 10(b) of the Act and is premised upon the Board's conclusion that there exists reasonable cause to believe that Local 248 has engaged in and is engaging in conduct violative of Section 8(b)(1)(A) of the Act, 29 U.S.C. § 158(b)(1)(A). Specifically, the Board contends that the union has engaged in violence and threats of violence against nonstriking employees and supervisory personnel of the association; has blocked ingress and egress at the premises of association members; has damaged the property of the association, of its nonstriking employees and its supervisory personnel; has followed the vehicles of nonstriking employees and en-

gaged in other conduct whereby it has interfered with, restrained and coerced employees of the association in the exercise of rights guaranteed them under Section 7 of the Act, 29 U.S.C. § 157.[1]

Pending its resolution of the unfair labor practices, the Board has sought a broad spectrum of relief. In addition to an injunction against further strike misconduct, the Board seeks orders: (1) requiring respondent to give to each member, its officers, representatives, agents, servants, employees and all persons acting in concert or participation with it clear and precise written instructions that it specifically refrain from engaging in the strike misconduct heretofore itemized; (2) proscribing the activity, by any pickets, picket captains, officers, representatives, agents, servants, or employees of respondent, and all persons or members acting in concert with it, while on the picket line, of writing on pads or sheets of paper in any manner or circumstances suggestive of the recordation of names, addresses, or automobile license numbers of any nonstriking employees of the association; (3) limiting the number of pickets to no more than two at any entrance to an association member; (4) requiring that respondent relinquish to the Board all lists in its possession of the names, addresses, or automobile license numbers of the non-

striking employees of the association, and (5) removing picket captains Larry Pultz, Mike Bubich, and Oscar Smith from all picket lines maintained by respondent at association premises and prohibiting them from engaging in any further picketing activities.

In support of its petition, the Board has submitted some seventy affidavits, together with copies of the exhibits and the 900 pages of testimony adduced before National Labor Relations Board Administrative Law Judge Eugene Dixon in a hearing on the association charges held before him on February 24 to February 28, 1975.[2] The Court has, in addition, heard substantial argument on the matter by counsel in terms of written briefs and oral argument. Having accorded all of the evidentiary submissions careful consideration in light of the arguments of counsel, this Court concludes that the Board has demonstrated reasonable cause to believe that respondent has engaged in and is engaging in conduct violative of Section 8(b)(1)(A) of the Act and that to issue injunctive relief would be both just and proper under the facts and circumstances of this case.

The Milwaukee Independent Meat Packers Association is comprised of a number of meat packing companies, all of which are engaged in the processing

---

**1.** "§ 157. Right of employees as to organization, collective bargaining, etc.
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and *shall also have the right to refrain from any or all such activities* except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." (Emphasis added.)

**2.** In view of the availability of the transcript of the proceedings before Judge Dixon, the Court denied respondent's earlier motion for an evidentiary hearing, citing as authority therefor the decisions in Squillacote v. Inter-

national v. United A., A. & A. I. Wkrs., 383 F.Supp. 491, 493 (E.D.Wis., 1974); Kennedy v. Teamsters, Chauf., Wareh'men & Helpers, Local 542, 443 F.2d 627, 630 (9th Cir., 1971); San-Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 546 (9th Cir., 1969), and the rationale that the evidentiary scope and purpose of Section 10(j) in no way contemplates a determination of the merits of the controversy. NLRB v. Acker Industries, Inc., 460 F.2d 649, 652 (10th Cir., 1972).
Respondent has been allowed ample opportunity to submit affidavits in opposition to the petition and to argue the merits of the petition, which it has done. In addition, respondent has been afforded the opportunity to supplement the transcript of the hearing before Judge Dixon with whatever additional testimony it desires. Having adopted these procedures, the Court is confident that respondent has been accorded due process.

of meat products in the Milwaukee, Wisconsin area: Milwaukee Dressed Beef Co., Milwaukee Meat & Provision Co., Northern Packing Co., Peck Meat Packing Co., Wisconsin Packing Co., August Born & Son, Donner Packing Co. and Nacker Packing. It is undisputed that the association is and at all material times herein has been an "employer," as defined in Section 2(2) of the Act, engaged in commerce and in operations affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and further, that such association transacts its business within this judicial district.

Respondent Local 248 is and at all material times herein has been the bargaining representative of certain employees of the association. On January 10, 1975, the collective bargaining agreement between respondent and the association expired. Discussions continued thereafter for a period of time, but on January 25, 1975 at 12:01 A.M., Local 248 commenced an economic strike against the association, which responded by the hiring of replacement employees, and assigned picket captains and pickets so as to have 24-hour-a-day picketing at the association premises. The violence, threats, and other strike misconduct of which the Board complains, and with which the transcript of the proceedings before Judge Dixon appears to be replete, commenced in general with the advent of the replacement employees at each of the association plants then functioning: Wisconsin Packing Co., Oregon Street plant, Wisconsin Packing Co., Butler plant, Northern Packing Co. and Peck Meat Packing Co. Despite the issuance of a temporary restraining order on February 11, 1975, which has substantially reduced the instances of alleged misconduct, further such incidents have been reported to this Court as late as February 27, 1975, which incidents have been the subject of contempt proceedings herein.

## I.  *Section 10(j)*

■ The authorization by which the Board secures injunctive relief against strike misconduct and other unfair labor practices in a federal district court is contained in Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j):

"The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

The issuance of such injunctive relief, however, is conditional upon a finding by this Court that there exists reasonable cause to believe that the alleged unfair labor practices have been committed and that the relief sought is just and proper under the facts and circumstances of this case. Boire v. International Brotherhood of Teamsters, Etc., 479 F.2d 778, 787 (5th Cir., 1973); Minnesota Mining & Mfg. Co. v. Meter, 385 F.2d 265, 270 (8th Cir., 1967); Angle v. Sacks, 382 F.2d 655, 660 (10th Cir., 1967); McLeod v. General Electric Co., 366 F.2d 847 (2d Cir., 1966); Squillacote v. International U., United Auto, Etc., 384 F.Supp. 1171, 1174 (E.D. Wis., 1974).

■ In determining the existence of "reasonable cause," the Court looks to "whether the Board has come forward with evidence sufficient to spell out a likelihood of violation." Douds v. Milk Drivers & Dairy Employees Union, 248 F.2d 534, 537 (2d Cir., 1957). On the basis of the evidence before it, this Court concludes that the Board has met such burden. The transcript of the proceedings before Judge Dixon is replete

with evidence of violence, including property damage and personal injury, threats of violence to nonstriking employees and other persons attempting to cross the picket line, obstruction of ingress to and egress from the association member plants and other misconduct. In fact, respondent does not contest the allegations of misconduct or that the purpose of such misconduct was to coerce the various persons to relinquish the rights guaranteed them under Section 7 of the Act. Rather, the union argues that there has been no demonstration by petitioner that the strike misconduct was in any manner attributable to it. While, as regards some of the specific instances of misconduct away from the picket line, the demonstration of agency may not be sufficient to support a finding of a violation of the Act, there exist numerous other instances of strike misconduct for which there exists reasonable cause to believe that the union was responsible. These include the instances of strike misconduct occurring on or off the picket line, which conduct was performed in the presence of picket captains or union stewards who observed the conduct and did nothing or was performed by the picket captains or union stewards themselves. In view of the fact that picket captains especially are selected by respondent as conduits for the issuance of its instructions to the pickets during the strike and are charged by respondent with maintaining order on the line, there certainly exists reasonable cause to believe that they are agents of the union and their activities thus attributable to the union. *See, e.g.,* Service Employees International Union, Local No. 50, AFL–CIO (Our Lady of Perpetual Help Nursing Home), 208 NLRB No. 10. Moreover, employing the general principles of agency law which are applicable herein, International Longshoremen's and Warehousemen's Union (Sunset Wire and Twine Company), 79 NLRB 1487 (1948); NLRB v. Internat'l. Broth. of Boilermakers, Etc., Local No. 83, 321 F.2d 807, 810 (8th Cir., 1963), when as agents of the union, picket captains permit other pickets within their jurisdiction to threaten or perpetrate violence or engage in other strike misconduct, there also exists reasonable cause to believe that respondent is accountable for such misconduct. *See, e.g.,* Our Lady of Perpetual Help Nursing Home, *supra,* and *see* International Brotherhood of Boilermakers, Etc., Local 696 (the Kargard Company), 196 NLRB 645, 647–648 (1972):

"Board law reveals that where a union authorizes a picket line, it is required to retain control over the picketing. *If a union is unwilling or unable to take the necessary steps to control its pickets, it must bear the responsibility for their misconduct . . . .* If a union exercises control and supervision on a picket line, *properly disavows and corrects misconduct,* naturally such misconduct would not appear to be pursuant to its authority . . . ." (Emphasis added.)

The Court likewise finds that there is reasonable cause to believe the union responsible in those incidents of threats and violence or other strike misconduct wherein pickets have left the line or followed from the line, in the presence of picket captains or other union officials, in pursuit of nonstriking employees or vehicles bearing nonstriking employees, or in which picket captains or union stewards have themselves left the line in pursuit of such persons. Our Lady of Perpetual Help Nursing Home, *supra;* Drivers, Salesmen, Etc. and Helpers Union Local 695 IBT and Tony Pelliteri Trucking Service, Inc., 174 NLRB 753, 757–758 (1969). Finally, the Court finds reasonable cause to believe the union responsible for violence and damage away from the picket line in those situations in which automobile license plate numbers were recorded by pickets with the knowledge of the union or picket captain and where threats were made in connection with the recordation of such license numbers either by the picket captain or in his presence, the Court finding reasonable cause to believe the

latter situations merely extensions of picket line conduct. *See, e. g.,* The Kargard Company, *supra.*

■ It must be noted that the Court herein decides neither the factual nor legal issues of agency which may be extant in any of the reported instances of alleged strike misconduct. Other than its determination of reasonable cause, whereby it concludes that petitioner's theory of union misconduct is neither insubstantial nor frivolous, this Court is precluded from any analysis of union responsibility for the strike misconduct alleged by the Board, as those issues are reserved for resolution by the Board itself:

"In sum, when faced with a § 10(j) petition, the District Court should not engage in a dispositive analysis of the legal issues involved in the underlying unfair labor practice proceedings and should examine them only insofar as necessary to determine whether the theories are insubstantial or frivolous. Where the circumstances make equitable relief proper, as here, and the legal theories are novel and contested, as they are here, the temporary injunction should be granted so long as the legal theories are not insubstantial or frivolous. *Thus, the legal questions are preserved for the forum that Congress has designated as best qualified to pass upon these matters.*" (Emphasis added). Boire v. Teamsters, supra, 479 F.2d at 792.

Having made the determination that there exists reasonable cause to believe that strike misconduct has occurred in violation of Section 8(b)(1)(A) of the Act and that the union is responsible therefor, it remains to consider whether issuance of the relief prayed for by petitioner would be just and proper under the circumstances.

## II. *Propriety of Injunctive Relief*

As illustrated in Angle v. Sacks, *supra,* the congressional concern manifested by the enactment of Section 10(j) was that the time consumed in final adjudication of issues by the Board might be such that the remedial purposes of the National Labor Relations Act would be frustrated. Thus, "when the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified," preservation and restoration of the status quo become appropriate considerations in granting relief pending Board determination of the issues. *Id.* 382 F. 2d at 660. In the instant case, this Court concludes that circumstances exist which create a reasonable apprehension that the final Board order might constitute a nullity.

■ Section 7 of the National Labor Relations Act guarantees to employees the right to refrain from strike activities and the right to continue employment during the course of a strike. NLRB v. Community Motor Bus Co., 439 F.2d 965, 967 (4th Cir., 1971); Oneita Knitting Mills, Inc., v. NLRB, 375 F.2d 385, 393 (4th Cir., 1967). The record compiled by petitioner herein demonstrates that in many instances, nonstriking employees, job applicants, and employees of other employers seeking to do business with the association have fled the association premises when confronted with threats and violence emanating from the picket line. Other employees, confronted with violence attributable to respondent away from the picket line, have declined to return. Although a temporary restraining order is now in effect which has substantially reduced the misconduct, instances of misconduct are still being reported to this Court in terms of petitions for civil contempt filed by the Board. The Court thus has every reason to believe that without an injunction, the strike misconduct would resume. Moreover, if it did so, there would likely be a great number of employees who would cease their employment at the association rather than suffer the consequences of passing through the line. By the time the Board finally adjudicates the issues involved herein, those employees who Section 7 was meant to protect might no longer be employed by or wish to be employed by the association. Thus there would be com-

plete frustration of the purposes of Section 7. Furthermore, this Court believes it would be naive to conclude that after a substantial period of time, such as that which might be required by the Board to finally resolve this matter, in which misconduct of the nature described in these proceedings has been tolerated, an order requiring cessation of such conduct would be of any practical effect. Since the status quo is generally defined as "the last uncontested status which preceded the pending controversy," Minnesota Mining v. Meter, *supra*, 385 F.2d at 273, a return to the condition of a peaceful strike is in order here. As Mr. Edmund Bobrowicz, secretary-treasurer of respondent Local 248, testified during the contempt proceedings, the entry of the restraining order herein has had that effect, without reducing the effectiveness of the strike. The Court therefore deems it just and proper to continue that status by the entry of an injunction.

■ Nor is this Court persuaded otherwise by respondent's argument that the misconduct alleged herein is a matter best resolved by the state courts and state law enforcement agencies. Respondent has presented no authority which dictates that the state has exclusive jurisdiction over strike misconduct which in some instances might also constitute violations of the state law. The Court is persuaded particularly by the evidence that strike misconduct occurred while police officers were present on the picket line and that police efforts have been hampered by the inability of the victims, who are primarily newly-hired personnel, to identify their assailants other than to recognize them as pickets whom they had seen on the line.

### III. *Other Relief*

■ Aside from its request for injunctive relief, the Board has requested other relief including limitation of the number of pickets at each entrance to an association member plant, relinquishment of all lists of names, addresses, or automobile license numbers of nonstrik-

ing employees now in the possession of the union, and removal of picket captains Larry Pultz, Mike Bubich and Oscar Smith from all picket line activity for the duration of the strike. Although Section 10(j) clearly authorizes "temporary relief" as well as an appropriate restraining order, the Court declines to enter an order with respect to each of the above requests.

It is not the intent of this Court to enter an order which would in any manner infringe upon protected strike activity nor lessen unnecessarily the impact of respondent's strike. If respondent refrains from the misconduct which the Court will hereafter proscribe, there would be absolutely no need to limit the number of pickets nor to order respondent to relinquish lists of nonstriking employees, which lists might have been obtained otherwise than by recordation on the picket line and might be utilized in a peaceful attempt to persuade such employees to honor the picket line. Thus, such orders would be neither just nor proper under the circumstances of this case. In the event the need for such orders is hereafter demonstrated, the Court would entertain a motion to modify or amend the injunctive order.

Similarly, with respect to picket captains Pultz, Bubich and Smith, the Court is not inclined to exclude them from the line for the duration of the strike on the basis of the civil contempt proceedings which earlier transpired herein. Such removal would, in the Court's opinion, be punitive in nature and therefore improper under an adjudication of civil contempt. In the event the named persons engage in further conduct contemptuous of the injunctive order, this Court will again entertain petitions for contempt.

Now, therefore, upon the foregoing, it is ordered that respondent Local 248, Meat & Allied Food Workers, Affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, its officers, representatives, agents, servants, employees, and all members and persons acting in concert

or participation with it be and hereby are enjoined, pending the final disposition of the matters involved herein by the National Labor Relations Board, from:

(a) blocking and hampering ingress and egress of vehicles to and from association premises; obstructing, hindering, preventing or stopping or attempting to obstruct, hinder or prevent any employee or other persons doing business with the association, from going to or coming from association premises; threatening association employees, supervisory personnel and/or employees of other employers seeking to do business with the association members, with physical violence, bodily injury or property damage, or by damaging or threatening to damage or destroy the property of the association, property and vehicles of association employees, supervisory personnel, and/or employees of other employers seeking to do business with the association; placing harassing, threatening and/or obscene telephone calls to and leaving threatening notes at the homes of association employees; hurling rocks and other objects and/or shooting at employees and/or at vehicles of association employees; assaulting association employees; discharging firearms in the vicinity of association premises; recording license plate numbers of vehicles entering into, exiting from or parked at association premises or writing, while on the picket line, in any fashion which suggests the recordation of such license numbers; photographing employees as they enter or exit from association premises; placing nails, glass or other sharp objects on the association driveways or parking lots; following association employees as they leave work and pursuing vehicles driven by association employees and employees of other employers doing business with the association, and swerving or driving at such automobiles in a reckless fashion;

(b) in any other manner restraining or coercing employees of the association or other persons seeking to do business with the association in the exercise of their rights as guaranteed under Section 7 of the Act.

It is further ordered that respondent give to each member of respondent, its officers, representatives, agents, servants, employees and all persons acting in concert or participation with it, in writing, clear and precise instructions, orders and directions to specifically refrain from engaging in any of the aforesaid conduct described in paragraphs (a) and (b) of this preliminary injunctive order. And to see that the instructions, orders, and directions are enforced and complied with by its members, officers, representatives, agents, servants, employees and all persons acting in concert or participation with respondent.

It is further ordered that service of this order be forthwith made by a United States Marshal upon respondent Local 248, Meat & Allied Food Workers, Affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO and upon the Milwaukee Independent Meat Packers Association, the charging party before said Board, in any manner provided in the Federal Rules of Civil Procedure for the United States District Courts, or by registered mail, and that proof of such service be filed herein.