UNITED STATES of America,
Plaintiff-Appellee,

v.

Dawn EICHHORST et al.,
Defendants-Appellants.

No. 76–1513.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1976.

Decided Nov. 12, 1976.

Stephen M. Glynn, Milwaukee, Wis., for defendants-appellants.

William J. Mulligan, U. S. Atty., Charles N. Clevert, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and WOLLENBERG, Senior District Judge.*

PELL, Circuit Judge.

On March 21, 1975, the district court entered an injunctive order against Local 248, Meat Cutters & Allied Food Workers, its officers, representatives, agents, and all members and persons acting in concert with it, enjoining, *inter alia,* specified picket line misconduct. *Squillacote v. Local 248, Meat & Allied Food Workers,* 390 F.Supp. 1180 (E.D.Wis.1975). This court subsequently denied appellate relief. 534 F.2d 735 (7th Cir. 1976). In the instant proceeding, defendants-appellants were found, pursuant to the authority of 18 U.S.C. § 401(3),[1] to have been in criminal contempt of that order by the conduct of appellant Eichhorst in scratching the automobile of a person doing business with the struck company on April 16, 1975, and the assault by all four appellants of an employee of the company on April 18, 1975. Appellants did not con-

---

* Albert C. Wollenberg, Senior District Judge of the Northern District of California, is sitting by designation.

1. That statute provides, in pertinent part:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

. . . . .

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

test the charges; and the district court, on May 21, 1976, found each of them to be in contempt and imposed a sentence on each of one and one-half days in the custody of the Attorney General of the United States. Each appellant has since served his or her sentence.

This appeal is based on the district court's alleged error in denying appellants' February 16, 1976, motion to dismiss the proceedings. To understand the nature of appellants' arguments, it is necessary to review the procedural history of this contempt proceeding. On May 9, 1975, the Regional Director of the National Labor Relations Board filed a petition advising the district court of violations of the injunctive order and seeking findings of civil and criminal contempt against the striking union and its officers, agents, employees, and members. Union counsel requested that any criminal charges brought come from a grand jury, and the district court ultimately acceded to this request. Recognizing that such a procedure was not required by due process, the district court nonetheless reasoned that it was free to exceed the minimal due process requirements and that it would promote the ends of justice to do so in this case.[2] In January 1976 the grand jury returned a two count indictment, and three days later the district court sent a copy thereof to each appellant, together with a notice ordering each of them to show cause why he or she should not be cited with and sanctioned for contempt of the March 21, 1975, order.

With the relatively rare exception, not germane here, of contempts committed in the presence of the court, Rule 42(b) of the Federal Rules of Criminal Procedure "prescribes the 'procedural regularity' for all [criminal] contempts in the federal regime." *Harris v. United States,* 382 U.S. 162, 167, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965) (footnote omitted). In pertinent part, that rule provides:

A criminal contempt . . . shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

As is plain from its language, Rule 42(b) does not require, and makes no provision for, initiation of proceedings by a grand jury indictment. Appellants do not dispute that these proceedings could have been initiated pursuant to Rule 42(b), and that if such had been done, the tests governing the sufficiency of notice under that rule would apply. But they argue that because an indictment was used here, the standards governing indictment sufficiency must instead be applied, and that the indictments here, which charged that appellants "did knowingly and intentionally [do certain acts] contrary to the March 21, 1975 Injunctive Order," failed to allege with particularity the necessary element of knowledge of the district court's order and should have been dismissed.

We have no doubt, nor does the Government, that willfulness (and specifically knowledge of the order appellants are charged with disobeying or resisting) is a necessary element of a contempt punishable under 18 U.S.C. § 401(3). *United States v. Greyhound Corporation,* 508 F.2d 529, 531–32 (7th Cir. 1974); *cf. Pettibone v. United States,* 148 U.S. 197, 204–05, 13 S.Ct. 542, 37 L.Ed. 419 (1893). But to say that much serves only as a preliminary step in determining the appropriate standard by which to judge the charge made and whether that standard was met.

Appellants recognize that if the notice requirements of Rule 42(b) govern

---

2. A portion of the district court's decision and order appears in the report of a related proceeding. *In re Amalgamated Meat Cutters &* *Butcher W., etc.,* 402 F.Supp. 725, 727 (E.D. Wis.1975).

this case, then "the particularity required of an indictment is not necessary . . . and technical accuracy is not required." *United States ex rel. Bowles v. Seidmon,* 154 F.2d 228, 230 (7th Cir. 1946); *accord, Bullock v. United States,* 265 F.2d 683, 691–92 (6th Cir. 1959), *cert. denied,* 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1260. Instead, all that is required is that appellants have been "fairly and completely apprised of the events and conduct constituting the contempt charged." *United States v. United Mine Workers of America,* 330 U.S. 258, 297, 67 S.Ct. 677, 697, 91 L.Ed. 884 (1947); *United States v. Robinson,* 449 F.2d 925, 930 (9th Cir. 1971); *Yates v. United States,* 316 F.2d 718, 723 (10th Cir. 1963); *United States v. Lederer,* 140 F.2d 136 (7th Cir. 1944), *cert. denied,* 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568. This is to be judged with reference to all of the court papers served on appellants in the light of what transpired in the court proceedings. *United States v. Robinson, supra* at 930. The actual notice to appellants would be highly relevant in such a determination. *United States v. Partin,* 524 F.2d 992, 999 (5th Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976); *Yates v. United States, supra* at 724; *see also Bullock v. United States, supra* at 692. Illustrative is a line of cases holding that, despite the language of Rule 42(b) requiring the prescribed notice to designate the contempt charged as criminal, the failure so to do does not vitiate contempt findings where the defendants in fact know the criminal nature of the charge and are accorded the appropriate procedural safeguards. *United States v. United Mine Workers of America, supra; United States v. Joyce,* 498 F.2d 592, 595 (7th Cir. 1974); *Federal Trade Commission v. Gladstone,* 450 F.2d 913, 916 (5th Cir. 1971); *Backo v. Local 281, United Bro. of Carpenters & Joiners,* 438 F.2d 176, 181 (2d Cir. 1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971). Because appellants with commendable candor concede the Government's good faith here and that they had actual notice that knowledge of the March 21 order was part of the contempt charged, their argument for reversal depends crucially on their assertion that the standards pertinent to Rule 42(b) do not apply in the present case.

The language of Rule 42(b) strongly suggests that it provides the governing notice standards for all criminal contempts committed outside the presence of the court, and we would be hesitant to decide otherwise absent a persuasive reason for doing so. In attempting to provide us with such a reason, appellants properly do not argue that a grand jury indictment must be returned to initiate criminal contempt proceedings. There is no such requirement, as it is well established that criminal contempts are not "infamous crimes" within the meaning of the Fifth Amendment right to grand jury indictment. *Green v. United States,* 356 U.S. 165, 184–85, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *United States v. Bukowski,* 435 F.2d 1094, 1099–1102 (7th Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). Instead, appellants base their argument on notions of fairness and due process and insist that because the district court chose to proceed by indictment, the resulting indictment should be assessed accordingly. In essence, appellants take the position that "an indictment is an indictment is an indictment," and they accuse the Government and the district court of reliance on the questionable semantics implicit in the argument (attributed to them) that "indictment" can be defined and redefined at the whim of the prosecution to the prejudice of these appellants. We do not perceive the arguments of the Government or the opinion of the district court to be so limited, and we believe appellants' theory to be founded on an incorrect analysis of the role of criminal contempts in the federal system.

As we have noted, appellants do not question the authority establishing that there is no right to grand jury indictment in criminal contempt cases. *Green v. United States, supra; United States v. Bukowski, supra.* They would, however, have us confine that proposition to its terms, without regard to

the logic and analysis which underlie it. We decline that invitation. Even a superficial analysis of the statute involved here, 18 U.S.C. § 401(3), indicates facial differences between the "crime" of contempt and ordinary criminal offenses. The latter type of offense is typically described in criminal statutes by stating that "whoever" or "any person who" does certain conduct shall be punished. In contrast, § 401(3) provides that a "court of the United States shall have power to punish" certain types of conduct. In *Green*, the Supreme Court considered the history of criminal contempt in this country and reached the conclusion that "[i]n various respects . . . criminal contempts have always differed from the usual statutory crime under federal law. . . . [T]hey possess a unique character under the Constitution." 356 U.S. at 187, 78 S.Ct. at 645 (footnote omitted).

■ It is this "unique character" that the appellants' attempt to confine the logic of *Green* fails properly to analyze. Like all federal action threatening life, liberty, or property, the imposition of criminal contempt sanctions must meet the test of due process; but criminal contempt is not a "crime" invoking directly the specific guarantees to criminal defendants which are found in the Bill of Rights and the rules and decisions designed to implement those rights. One specific right which is not thus invoked, as *Green* established, is the right to grand jury indictment.

In *United States v. Bukowski, supra,* this court had occasion to consider the rule of *Green* and its rationale in the light of *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), which granted to contemnors who may be subjected to nonpetty sanctions the right of jury trial. Because *Green* had relied in substantial part on earlier decisions denying such a right, this court evaluated but rejected the argument that its logic had been undercut by

*Bloom.* We stated at that time that nothing in *Bloom* or subsequent decisions of the Supreme Court signalled an abandonment of the doctrine attributing "special constitutional status" to contempt proceedings, 435 F.2d at 1101, and that "[t]he procedural protections which have gradually surrounded imposition of criminal contempt penalties . . . represent the accretions of 'fundamental fairness' rather than application of provisions of the Bill of Rights to contempt prosecutions as 'crimes.'" *Id.* Extension of jury trial rights to contemnors facing non-petty sanctions was found to be consistent with that analysis, but finding no reason why due process should be thought to require the interjection of the protections of grand jury indictment into the criminal contempt process, we declined to reconsider the rule of *Green.*

■ If, as this analysis suggests, the test of criminal contempt proceedings is that of due process, and due process is satisfied without any of the protections which grand jury indictment is designed to promote, it is difficult for us to see why the district court's action in referring the instant proceedings to a grand jury, action providing protections in excess of those required, should be held to have created a higher standard than Rule 42(b) articulates for notice to alleged contemnors. There is no need here to consider whether, in different circumstances, the use of this somewhat unusual procedure, although well-intentioned, might create such confusion that fundamental rights of alleged contemnors could be denied,[3] for this is not such a case. Appellants admit full actual notice of the nature and particulars of the contempt charged; they do not suggest any confusion, and we can see none. We hold only that the adequacy of notice provided by a contempt charge is to be assessed under Rule 42(b). The fact that a district court, acting in excess of the requirements of due process, may refer a contempt petition to a

---

3. *See, e. g., Carlson v. United States,* 209 F.2d 209, 218 (1st Cir. 1954), in which the use of a grand jury presentment in conjunction with ambiguous declarations by the trial judge apparently produced such a result.

grand jury does not convert the contempt into a constitutional "crime" to which the standards governing indictment sufficiency must be applied.

Appellants' reliance on cases establishing the undisputed proposition that an indictment must allege the essential elements of the offense charged is misplaced. With one exception, each case cited to us involved either normal statutory offenses to which the constitutional guarantee of grand jury indictment applied, *United States v. Wabaunsee,* 528 F.2d 1 (7th Cir. 1975) (interstate transportation of stolen property); *United States v. Bearden,* 423 F.2d 805 (5th Cir. 1970), *cert. denied,* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (embezzlement); *United States v. Richman,* 369 F.2d 465 (7th Cir. 1966) (mail fraud); *Davis v. United States,* 253 F.2d 24 (6th Cir. 1958) (conspiracy); or, as in *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), a specific statutory provision requiring that proceedings be initiated by indictment.

■ As mentioned above, appellants cite only one authority in which the right to initiation by indictment did not pertain where indictment sufficiency standards were applied. In *United States v. Sternman,* 415 F.2d 1165 (6th Cir. 1969), *cert. denied,* 397 U.S. 907, 90 S.Ct. 903, 25 L.Ed.2d 88 (1970), a convicted contemnor against whom proceedings had been initiated by indictment unsuccessfully sought to have the judgment arrested on the ground that the indictment failed to allege the "essential facts constituting the offense" as required of indictments by Rule 7(c), Fed.R. Crim.P. The reviewing court did apply that rule in finding that the facts in question were not essential and that the appellant had been adequately apprised of the charges against him, but the single page of its opinion addressed to the issue cannot be construed as a holding that Rule 7(c) and not Rule 42(b) governs the adequacy of a contempt charge. In fact, the court made no mention of Rule 42(b) and there is no indication that the parties presented the issue raised in this case to that court. In any event, only if the *Sternman* court had found a failure to meet Rule 7(c) standards would it have been necessary to raise the question sua sponte. We do not find *Sternman* in any sense persuasive support for appellants' position here.

This is all the more true when it is considered that the substantial weight of authority is to the contrary. The recent decision of the Fifth Circuit in *United States v. Leyva,* 513 F.2d 774 (5th Cir. 1975), for example, involved contempt proceedings initiated by indictment. Noting that this unusual procedure gave the "appearance of some irregularity," *id.* at 777, the court nonetheless found no basis for reversal, because the provisions of Rule 42(b), which were held to govern the procedural aspects of criminal contempts even in such a case, *id.* at 778, were substantially complied with and no prejudice accrued to the contemnor. Likewise, the court in *United States v. Mensik,* 440 F.2d 1232, 1234 (4th Cir. 1971) (per curiam), reviewing similar facts, held that while indictment was not necessary in criminal contempt proceedings, "it is permissible so long as the notice requirements of rule 42(b) are satisfied." [4] And in two cases in which contempts were initiated by grand jury presentment, the First and Second Circuits found the standards of Rule 42(b) to govern, and treated the presentments as components of the notice required by that rule in applying those standards. *United States v. DeSimone,* 267 F.2d 741, 743–44 (2d Cir. 1959), *rev'd on other grounds,* 361 U.S. 125, 80 S.Ct. 74, 4 L.Ed. 2d 70 (per curiam); *Carlson v. United States, supra,* 209 F.2d at 218.

When assessed under Rule 42(b), the adequacy of the charges of contempt involved

---

**4.** Since appellants here did not object to the use of the grand jury, and in fact appear to have been involved in requesting it, we have no occasion to consider the tension between the Fifth Circuit's apparent disapproval of the the procedure and the Fourth Circuit's more liberal attitude. We note only that our dictum in *United States v. Bukowski, supra,* 435 F.2d at 1103, that "prosecution of criminal contempt may follow from indictment or presentment" does not foreclose issues which may be raised in future cases.

here is, by appellants' admission, indisputable. We rest our decision to affirm the judgment of the district court on this ground, just as the Government was content to rely on this ground in its argument to this court. But if it were necessary to consider the sufficiency of the indictment in this case under the standards of Fed.R. Crim.P. 7(c), as appellants urge us to do, we would have little difficulty reaching the same result. As pertinent here, Rule 7(c)(1) requires only that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." While indictments must meet a higher standard than notice under Rule 42(b), there is no requirement that criminal pleadings be judged rigidly and formalistically. "Convictions are no longer reversed because of minor and technical deficiencies [in the charging papers] which did not prejudice the accused. . . . This has been a salutary development in the criminal law." *Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed. 2d 1041 (1959) (citations omitted).

The indictment in this case, as we have noted, charged that appellants "did knowingly and intentionally [do certain acts] contrary to the March 21, 1975 Injunctive Order" of the district court. We believe it is reasonable to read the language to charge appellants' conduct with having been "knowingly and intentionally" contrary to the court's order. We do not say that the language might not have been better drafted, but it seems to us that the indictment "sufficiently apprise[d] [these appellants] of the nature of the charge which [they] must meet" and that its allegations were "sufficiently specific to stand as a bar to further prosecution"; thus there was compliance with Rule 7(c). *United States v. Rizzo,* 418 F.2d 71, 74 (7th Cir. 1969), *cert. denied,* 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970). Our conclusion would not be weakened by this court's opinion in *United States v. Wabaunsee, supra,* 528 F.2d 1, cited by appellants, in which the Government argued that an indictment devoid of any language suggesting the necessary element of scienter did not prejudice the defendants because there had been two trials, by the second of which defendants surely knew that scienter was charged, and because the jury was properly instructed. On the facts of that case, this court rejected the argument but noted that it "would be well taken if the indictment involved was ambiguously drafted and contained language which could be construed to supply the missing element." *Id.* at 4. This case, at worst, fits that description; the absolute lack of prejudice to these appellants and their actual knowledge of the nature of the offenses charged bolster a construction of these indictments as having adequately alleged the element of appellants' knowledge of the court order they violated.

For the reasons stated herein, the judgment of the district court is

AFFIRMED.