**1344**

In re Elmer C.
OBERHELLMANN, Respondent.

No. S–90–34.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 19, 1990.

Patrick Kelley, Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Bruce Nangle, St. Louis, Mo., for defendant.

## OPINION

RICHARD MILLS, District Judge:

A question of criminal contempt.

By an attorney.

On July 22, 1988, Douglas Payton filed an action against the City of Mattoon, Illinois, seeking to recover for severe personal injuries. *Payton v. City of Mattoon,* 88–3218 (C.D.Ill.1988). Mr. Payton's only attorney of record was Howard B. Becker. Mr. Becker filed all documents on behalf of Mr. Payton and appeared for the final pretrial conference. Pursuant to our standing order on final pretrial conferences in civil cases, *lead* trial counsel are *required* to attend the final pretrial conference. *See* CDIL–1.

On April 30, 1990, after being notified that the action had been settled, we entered an order dismissing the case. Nine days later the Clerk's Office received a document entitled "Withdrawal of Appearance," purportedly signed by Mr. Becker. That document stated that Mr. Becker was withdrawing as counsel for Mr. Payton and informed the Court that Elmer C. Oberhellmann, Inc., would "remain as counsel for Plaintiff." Over the next several days we received a telephone call, letter, and affidavit from Mr. Becker—all of which indicated that he neither signed nor filed the purported withdrawal of appearance. Sensing a problem, we issued a Notice of Criminal Contempt Charges and ordered Respondent to appear and show cause why he should not be held in criminal contempt of court for filing a false and fraudulent pleading. *See* 18 U.S.C. § 401. Respondent refused to accept these documents by certified mail, requiring us to order the U.S. Marshal to serve them upon him.

On July 3, Respondent appeared without counsel and moved for a continuance of the show cause hearing which was denied. We thereupon proceeded with Respondent's hearing wherein he admitted forging Mr. Becker's name to the withdrawal of appearance and filing it with this Court. By way

of justification, Respondent argued that he represented Mr. Payton and that Mr. Becker stole the *Payton* file from Respondent's office upon the termination of their association. Respondent argued that Mr. Becker did not have authority to settle the case and that the withdrawal of appearance was necessary to protect Mr. Payton from an unfairly low settlement.

We rejected Respondent's justifications and found him guilty of filing a false and fraudulent pleading in violation of 18 U.S.C. § 401(1). On August 17, Respondent, having retained an attorney, filed a motion for new trial, or in the alternative to dismiss. When the parties appeared for sentencing on August 20, we allowed Respondent's motion for continuance and granted him leave to file a supplemental motion for new trial. We now turn to that motion.

In our order allowing Respondent to file a supplemental motion for new trial, we directed the parties to specifically address the 7–day time limitation contained in Fed. R.Crim.P. 33. Specifically, a motion for new trial based on any ground other than newly discovered evidence must be filed within 7 days of the verdict or such further time as allowed by the Court within that 7–day period. Because neither Respondent's original nor supplemental motions for new trial were filed within this 7–day period, we are foreclosed from considering any ground other than newly discovered evidence. Not surprisingly, Respondent bases his motion for new trial upon the discovery of new evidence.

### MOTION FOR A NEW TRIAL

■ A motion for new trial is addressed to the sound discretion of the district court. *United States v. Davis*, 604 F.2d 474, 483 (7th Cir.1979). To obtain a new trial based upon newly discovered evidence, respondent must show that the evidence: (1) came to his knowledge only after trial; (2) could not have been discovered sooner had he exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial. *United States v. Tucker*, 836 F.2d 334, 336

(7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989).

### I

■ Respondent cites two instances of "newly discovered" evidence which he argues entitle him to a new trial. First, Respondent has submitted the transcript of a conversation on April 28, 1990, which occurred between Mr. Becker and Mr. Payton in Mr. Payton's hospital room at the University of Missouri-Columbia Medical Center. In that conversation, Mr. Becker states that "the purpose of this proceeding is to enter into a contract between Douglas Payton and myself." Mr. Becker and Mr. Payton then proceed to discuss their relationship and Mr. Becker's continued representation of Mr. Payton in his lawsuit against the City of Mattoon.

Respondent argues that this conversation supports his position that Mr. Becker stole the *Payton* file from Respondent's office and subsequently entered into a contract with Mr. Payton to represent him in his lawsuit against the City of Mattoon. Subsequent to the events underlying this action, the City of Mattoon filed an interpleader action in this Court seeking a judicial determination of the respective parties' rights to the settlement money. *City of Mattoon, Illinois v. Payton*, 90–3160 (C.D. Ill.1990). Respondent obtained the transcript of the conversation between Mr. Becker and Mr. Payton on August 27, 1990, when it was produced by Mr. Becker's attorney as discovery in the interpleader action. Conceding for the purpose of argument, as the Government does, that this transcript fulfills the first two elements required to obtain a new trial, *see United States v. Feldman*, 756 F.2d 556, 560 (7th Cir.1985), we turn to the third and fourth elements.

The transcript is ambiguous. Construing it in the light most favorable to Respondent, it supports his position that Mr. Becker did not, prior to April 28, have an independent attorney-client relationship with Mr. Payton. Construed in this manner, the transcript is merely cumulative and not material to the issues before this Court. Re-

spondent argued at his show cause hearing that he was justified in filing the false withdrawal of appearance because Mr. Becker stole the *Payton* file from his office and did not have authority to settle the case. Respondent has failed to convince this Court, however, that Mr. Becker's actions, if true, would constitute a legal justification for filing a fraudulent pleading with the Court. Thus, we must conclude that the transcript is not material to the issues currently before this Court.

■ Furthermore, we cannot conclude that the transcript, had it been before the Court at the time of the show cause hearing, probably would have resulted in an acquittal. A district court, when entertaining a motion for a new trial, may rely upon knowledge gained while presiding over the trial. *United States v. Garrison*, 296 F.2d 461, 465 (7th Cir.1961), *cert. denied*, 369 U.S. 804, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962). Respondent admitted under oath filing the false and fraudulent pleading. As previously discussed, his underlying dispute with Mr. Becker does not provide a legal justification for committing a fraud upon the Court. Therefore, we conclude that the transcript of the conversation between Mr. Becker and Mr. Payton does not satisfy the third and fourth elements of the test required to obtain a new trial based upon newly discovered evidence.

## II

■ The second piece of evidence Respondent argues entitles him to a new trial is a handwritten list of cases submitted by Kate McClaren, a secretary for Respondent. Ms. McClaren states that on April 11, 1990, Mr. Becker told her that he was resigning and would need to be withdrawn from certain cases. The handwritten list contains a form "withdrawal of appearance" and lists several cases from which Mr. Becker would need to be withdrawn. In the lower lefthand corner of the list, several other cases are listed as belonging to Mr. Becker which he would take with him upon terminating his association with Respondent. The *Payton* case is not listed on this document.

It is difficult to understand how this document satisfies any of the required elements for obtaining a new trial based upon newly discovered evidence. This information was in Respondent's possession prior to his show cause hearing. In addition, the *Payton* case is not included with the cases from which Mr. Becker would withdraw nor among the cases Mr. Becker would take with him. Thus, this document neither supports nor impeaches Respondent's defense. In short, it is completely irrelevant.

In summary, the transcript of the conversation between Mr. Becker and Mr. Payton, considered in the light most favorable to Respondent, is not material to the issues before this Court and would not likely lead to an acquittal in the event of a retrial. Furthermore, the handwritten document submitted by Ms. McClaren fails to satisfy any of the required elements for obtaining a new trial and is simply irrelevant based upon its failure to mention the *Payton* case in any capacity. Therefore, Respondent's motion for new trial based upon newly discovered evidence must be denied.

## MOTION TO DISMISS

Respondent has moved in the alternative to dismiss. In support of this motion, Respondent raises four arguments: (1) Respondent was entitled to a trial by jury; (2) a variance existed between the First Amended Notice of Criminal Contempt charges and the Government's proof at trial; (3) certain procedural requirements of Fed.R.Crim.P. 42(b) were not complied with; and (4) the Government failed to establish all of the requisite elements to prove Defendant guilty beyond a reasonable doubt of criminal contempt of court.

### A.

■ Turning first to Respondent's argument concerning his right to a jury trial, no statutory right to a jury trial exists in criminal contempt cases. *United States v. Kozel*, 908 F.2d 205, 207 (7th Cir.1990). Thus, any right to a jury trial must be based upon the jury clauses in the United States Constitution. U.S. Const. art. III, § 2; Amend. VI. However, as the circuit court stated in *Kozel*, the "relevance of the

jury clauses in a trial for criminal contempt turns on the severity of the sentence actually imposed. *Id.; Bloom v. Illinois,* 391 U.S. 194, 211, 88 S.Ct. 1477, 1487, 20 L.Ed.2d 522 (1968). In the absence of a legislative declaration to the contrary, a sentence of six months imprisonment or less (plus normal periods of probation) may be imposed without an opportunity for a jury trial. *Cheff v. Schnackenberg,* 384 U.S. 373, 380, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629 (1966). Therefore, because Respondent was denied a jury trial, this Court is limited to imposing a sentence of imprisonment of no longer than six months.

### B.

■ Respondent's second argument in support of his motion to dismiss is based upon an alleged variance between the First Amended Notice of Criminal Contempt charges and the Court's ultimate finding of guilt. Specifically, the First Amended Notice of Criminal Contempt ordered Respondent to show cause why he should not be held in criminal contempt for,

> [i]n violation of 18 U.S.C. § 401(2), filing a false and fraudulent pleading on May 9, 1990, in the cause entitled *Payton v. City of Mattoon,* No. 88–3218, then pending before the United States District Court for the Central District of Illinois.

The order finding Respondent guilty of criminal contempt of court stated that he was convicted under 18 U.S.C. § 401(1). Respondent argues that the discrepancy between the First Amended Notice of Criminal Contempt charges, which cited § 401(2), and his ultimate conviction under § 401(1), constitutes an impermissible variance.

"A variance occurs when the terms of the indictment are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Williams,* 798 F.2d 1024, 1030 (7th Cir.1986). The constitutional violation embodied in a variance is based upon the fifth amendment's requirement that the Government proceed by way of indictment against a criminal defendant.

■ With the exception of criminal contempts committed in the Court's presence, Fed.R.Crim.P. 42(b) governs the procedure to be employed in prosecuting criminal contempt cases. A defendant charged with criminal contempt under § 401 does not have a right to be indicted by a grand jury. *United States v. Eichhorst,* 544 F.2d 1383, 1385 (7th Cir.1976). Because the right of indictment contained in the fifth amendment does not apply to criminal contempt charges, no "variance" could have occurred in the case at bar.

■ The notice requirements of Rule 42(b) govern this case. Under this rule, "the particularity required of an indictment is not necessary ... and technical accuracy is not required." *Id.* at 1386 (quoting *United States ex rel. Bowles v. Seidmon,* 154 F.2d 228, 230 (7th Cir.1946)). Rule 42(b) provides that the notice of criminal contempt "shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such." Fed.R.Crim.P. 42(b). All that is required under Rule 42(b) is that Respondent be "fairly and completely apprised of the events and conduct constituting the contempt charged." *United States v. United Mine Workers of America,* 330 U.S. 258, 297, 67 S.Ct. 677, 697, 91 L.Ed. 884 (1947); *Eichhorst,* 544 F.2d at 1386. Whether Respondent received sufficient notice is to be judged with reference to all of the court papers served on him in light of what transpired in the court proceedings. *Eichhorst,* 544 F.2d at 1386.

In the case at bar, the First Amended Notice of Criminal Contempt charges, which was served upon Respondent by the U.S. Marshal, ordered him to appear and show cause for "filing a false and fraudulent pleading on May 9, 1990, in the cause entitled *Payton v. City of Mattoon,* No. 88–3218...." A copy of the First Amended Notice of Criminal Contempt charges, along with a copy of this Court's order requiring the U.S. Marshal to serve Respondent, were served upon Respondent on May 22, 1990.

Respondent clearly had sufficient notice of the alleged contempt which he was called upon to answer. Respondent's conduct at the show cause hearing demon-

strates that he was aware of exactly what was at issue.

Section 401(2) provides that a court of the United States may punish as contempt "[m]isbehavior of any of its officers in their official transactions." An attorney, although commonly referred to as an "officer of the court," is not the type of "officer" to which § 401(2) applies. *Cammer v. United States*, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956). Respondent's defense at the show cause hearing was based upon his alleged justification in filing the fraudulent pleading in an attempt to protect Mr. Payton. Had Respondent actually been misled into believing that the Government was proceeding by way of § 401(2), he would have simply argued that he was not an "officer" of the court within the meaning of § 401(2). Respondent has failed to introduce any evidence that he was actually misled by the typographical error in the First Amended Notice of Criminal Contempt charges and thus his second argument for dismissal must be rejected.

### C.

■ Respondent's third argument in support of his motion to dismiss implicates a procedural irregularity under Rule 42(b). Specifically, Rule 42(b) requires that the notice of criminal contempt "shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States Attorney or of an attorney appointed by the Court for that purpose, by an order to show cause or an order of arrest." Fed.R.Crim.P. 42(b). Respondent argues that the written notice of criminal contempt was issued by the Court without application by the United States Attorney or of an attorney appointed by the Court. The Government argues in response that this Court acted properly by construing Mr. Becker's letter to the Court dated May 9, 1990, as such an application. This letter apprised the Court that Mr. Becker did not sign the withdrawal of appearance which was filed in the *Payton* case. This argument must be rejected because the Court did not appoint Mr. Becker for the purpose of prosecuting the contempt charge.

Although the Court technically erred by failing to appoint the United States Attorney prior to issuing the notice of criminal contempt, we do not believe that this error constitutes grounds for vacating Respondent's conviction. Illustrative is the line of cases holding that, despite the specific language of Rule 42(b) requiring the prescribed notice to designate the contempt charged as criminal, the failure to do so does not vitiate contempt findings where the defendant in fact knows the criminal nature of the charge and is accorded the appropriate procedural safeguards. *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *United States v. Joyce*, 498 F.2d 592, 595 (7th Cir.1974). Respondent has failed to cite any manner by which this procedural irregularity prejudiced him in his defense.

### D.

■ Respondent's final argument in support of his motion to dismiss is that the Government failed to prove all of the elements constituting contempt of court under § 401(1) beyond a reasonable doubt. Section 401(1) provides that a court of the United States may punish as contempt "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1). Four elements are required to support a contempt conviction under this section: (1) the conduct must constitute misbehavior; (2) the misbehavior must rise to the level of an obstruction of the administration of justice; (3) the conduct must occur in the Court's presence or so proximate that it obstructs the administration of justice; and (4) the defendant must possess the requisite intent. *United States v. Seale*, 461 F.2d 345, 366–67 (7th Cir.1972).

(1) Turning to the first requirement, the term *"misbehavior"* is defined as "conduct inappropriate to the particular role of the actor, be he judge, juror, party, witness, counsel or spectator." *Id.* at 366. Certainly, forging another attorney's name to a legal document and filing that document with the Court constitutes misbehavior on the part of an attorney.

(2) The second element required to support a contempt conviction under § 401(1) is that the conduct must amount to an *"actual obstruction of justice." In re McConnell*, 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962). Furthermore, the obstruction must be "clearly shown." *Ex parte Hudgings*, 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656 (1919). Beyond these generalities, the Supreme Court has not clearly enunciated what the definition of "obstruction of justice" entails. In *Seale*, the circuit court stated "that the standard to be applied is one of material disruption or obstruction." *Seale*, 461 F.2d at 369.

In the case at bar, Respondent's filing of the false and fraudulent pleading jeopardized the settlement negotiated between Mr. Becker and attorneys representing the City of Mattoon. Following the filing of the false withdrawal of appearance, the City of Mattoon moved for an order enforcing the settlement agreement wherein the City stated "[u]nder the circumstances, defendant [City of Mattoon] cannot safely make any payments pursuant to the terms of the settlement agreement because of the statements and actions of attorney Oberhellmann." Furthermore, Respondent's actions resulted in the City of Mattoon filing an interpleader action in this Court wherein the City seeks a judicial determination of the respective parties' rights to the settlement proceeds. Thus, we must conclude that Respondent's misbehavior by filing the false and fraudulent pleading constituted a material disruption or obstruction of the administration of justice.

(3) Turning to the *intent* requirement, the *Seale* court defined the minimum requisite intent as "a volitional act done by one who knows or who should reasonably be aware that his conduct is wrongful." *Seale*, 461 F.2d at 368. During the show cause hearing, Respondent, under oath, admitted forging Mr. Becker's name to the withdrawal of appearance and filing it with this Court. This action was done with the specific intent to thwart the settlement reached between Mr. Becker and the attorneys for the City of Mattoon. Therefore, we conclude that the Government clearly established that Respondent possessed the requisite intent pursuant to § 401(1).

(4) The final element to be established under § 401(1) is that Respondent's misbehavior occurred in the Court's *"presence* or so near thereto as to obstruct the administration of justice." To fully understand the scope of this element we must explore its inter-relationship with the "actual presence" requirement in Rule 42(a).

Rule 42(a) authorizes the Court to summarily punish criminal contempt when it occurs in the Court's actual presence. The judge must certify that he both saw or heard the contemptuous conduct and that it occurred in his presence. Because of the certification requirement, the actual presence language must be literally interpreted.

On the other hand, the presence requirement embodied in § 401(1) is broader than the actual presence requirement of Rule 42(a). In the case at bar, Respondent did not forge Mr. Becker's name to the withdrawal of appearance in our actual presence nor file it with this Court by personally handing it to us. Rather, Respondent apparently forged Mr. Becker's name to the pleading at his law office in St. Louis, Missouri, and then filed it by mail with this Court's clerk's office. The issue, therefore, is whether this misbehavior was committed "so near" our presence as to obstruct the administration of justice.

This phrase has been construed as imposing a geographical, as opposed to a causal, limitation on a court's contempt power under § 401(1). *Nye v. United States*, 313 U.S. 33, 48, 61 S.Ct. 810, 815, 85 L.Ed. 1172 (1941). In *Nye*, the plaintiff (Elmore) brought an action against the defendants alleging that his son died as the result of the use of a medicine manufactured by the defendants. Elmore was described as "illiterate and feeble in mind and body." *Id.* at 39, 61 S.Ct. at 811. Respondents, Nye and Mayers, through the "use of liquor and persuasion," induced Elmore to seek a termination of the suit. Apparently, Nye's daughter was married to the son of one of the defendants and Mayers was a tenant of Nye's who was acquainted with Elmore.

The Court, after describing respondents' conduct as "highly reprehensible," held that because it occurred more than 100 miles from the courthouse, it was insufficient to satisfy the geographical limitation embodied in § 401(1). *Id.* at 49, 52, 61 S.Ct. at 816, 817.

During the course of its discussion in *Nye*, the Court reviewed the history of the modern contempt statute. Apparently, the modern version of the statute dates back to the act of March 2, 1831, which was passed by Congress as a result of the impeachment proceedings against District Judge James H. Peck. Judge Peck imprisoned and disbarred an attorney for publishing a criticism of one of his opinions in a case which was on appeal. Judge Peck was acquitted by the Senate on a vote of 22 to 21. The day after Judge Peck's acquittal Congress took steps to amend the original contempt statute passed in 1789 to limit the power of federal courts to punish for criminal contempt. The Court, relying on the Congressional intent to limit the power of federal courts to punish for criminal contempt, construed the phrase "so near thereto" to reach only misbehavior occurring in the vicinity of the court. *Nye*, 313 U.S. at 48–49, 61 S.Ct. at 815–16 (citing *Savin, Petitioner*, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889) (attempted bribery of witness in the juryroom within a few feet of the courtroom or hallway immediately adjoining the courtroom held to be misbehavior in the presence of the Court)).

Since the Court's decision in *Nye*, the presence requirement embodied in § 401(1) has been interpreted as broader than the "actual presence" requirement of Rule 42(a). For example, in *Carlson v. United States*, 209 F.2d 209 (1st Cir.1954), the court stated that the "presence" requirement under § 401(1) "is used in a brooding, metaphorical sense broader than misbehavior in the actual presence of the judge as used in Rule 42(a)." *Id.* at 213. Continuing, the court stated that the grand jury is an arm of the district court; and that no doubt there may be instances of misbehavior in the grand jury room that would constitute the offense of criminal contempt of court because committed in the "presence" of the court within the broader meaning of § 401(1). *Id.*

The district court's clerk's office is as much an arm of the court as is the grand jury. *See* 28 U.S.C. § 956 ("[t]he clerk of each court and his deputies and assistants shall exercise the powers and perform the duties assigned to them by the court."). In fact, a clerk of court actually is more of an "arm" of the court than is a grand jury whose purpose is to stand as an independent body between the government and its citizens.

Whether the misbehavior which is relied upon as constituting contempt of court occurred "in the presence of the court or so near thereto as to obstruct the administration of justice" depends on what specific acts are relied upon as constituting the contempt. *O'Malley v. United States*, 128 F.2d 676, 681 (8th Cir.1942), *rev'd on other grounds, Pendergast v. United States*, 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368 (1943). Respondent's forging of Mr. Becker's name to the withdrawal of appearance in St. Louis certainly was not committed within the geographical presence of this Court. However, the mere act of signing another's name to a document does not alone constitute either a crime nor contempt of court. Rather, the contemptuous conduct occurred when the fraudulent pleading was filed in our Clerk's Office after being mailed by the Respondent who intended to thwart the settlement reached between Mr. Becker and the City of Mattoon. *Id.*

Based upon the foregoing discussion, we must conclude that the Government established beyond a reasonable doubt that Respondent committed misbehavior so near the presence of this Court as to obstruct the administration of justice and that Respondent intended to obstruct justice by filing the false and fraudulent pleading containing Mr. Becker's forged signature. Therefore, Respondent's motion to dismiss must be denied.

*Ergo*, Respondent's motion and supplemental motion for new trial, or in the alternative to dismiss (d/e 12, 19) are DENIED.

Sentencing of Respondent is hereby SET for Monday, December 3, 1990, at 1:30 p.m.